**Gayle BREWER, Plaintiff,**

v.

**EXXON CORPORATION, Defendant.**

**No. Civ-1-85-190.**

United States District Court, E.D. Tennessee, S.D.

Oct. 15, 1985.

W. Neill Thomas, III, Thomas, Mann & Gossett, Chattanooga, Tenn., for plaintiff.

Paul R. Leitner, James Golden, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napolitan, Chattanooga, Tenn., for defendant.

## MEMORANDUM

EDGAR, District Judge.

This matter is before the Court on defendant's motion to dismiss or for partial summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. Jurisdiction of the Court arises in part under 28 U.S.C. §§ 1332 and 1441. This case involves an alleged breach of contract and alleged violations of federal statutes, specifically the Petroleum Marketing Practices Act (hereinafter the "PMPA" or "Act"), 15 U.S.C. §§ 2801 *et seq.*, and Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* The Court must currently decide whether the PMPA applies to the relationship between the plaintiff and defendant.

## I. FACTS.

Plaintiff began working for the Exxon Corporation in 1974. Brewer apparently worked at Exxon Retail Store No. 496, located in Cleveland, Tennessee, in a management position from February of 1981 through January of 1985. Initially, plaintiff served as cashier/manager, an hourly paid position, but was promoted to retail store manager on February 10, 1984, a salaried position.

As a retail store manager, Brewer reported directly to an Exxon supervisor. Her duties included the completion of daily remittance reports, monthly settlement reports, and expense reports. Necessary forms, envelopes, and postage were provided by Exxon. Brewer had neither a supply agreement nor an agreement to lease the marketing premises from Exxon. The defendant determined the retail price per gallon at which the gasoline would be sold at the station.

Plaintiff was treated as an employee in that her federal income taxes were withheld by Exxon and the defendant paid the employer's portion of her social security taxes. Unemployment taxes and workers compensation coverage was paid for by Exxon. Brewer received a Form W-2 at the end of each year. Brewer also participated in an Employee Stock Ownership Plan ("ESOP").

Exxon retained responsibilities in connection with motor fuel delivered to Store No. 496. Exxon paid all relevant taxes, license fees, and related costs. Defendant also authorized credit and bore the risk associated with that credit. Title in the motor fuel never vested in the plaintiff. Exxon supplied all gasoline and equipment used at the location. Ordinary business expenses were reimbursed by Exxon and the plaintiff was not required to invest any money into the inventory, supplies, and facilities of the store.

In 1984, Exxon decided to convert the location from a company-owned and operated store to a franchise. Brewer was interested in purchasing the location and in operating the franchise. Exxon required, not necessarily of the plaintiff, that whoever purchased Retail Store No. 496 would also be required to purchase Retail Store No. 614, also located in Cleveland, Tennessee. Eventually the stores were sold to another individual.

Brewer's working hours did increase when she became retail manager of Store No. 496 and she was complimented for her work associated with that location. Brewer claims she was given the position in anticipation of her eventual ownership of the franchise. Brewer left the employment of Exxon in January of 1985.

## II. OVERVIEW OF PETROLEUM MARKETING PRACTICES ACT.

■ The Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.*, was enacted by Congress to cover the relationship between oil companies and retailers or distributors of motor fuel. A franchise is defined as any contract between a refiner and distributor, a refiner and a retailer, a distributor and another distributor, or a distributor and retailer under which a retailer or distributor uses the trademark of an oil company in connection with the sale of motor fuel. 15 U.S.C. § 2801(1)(A)(i)–(iv). The PMPA introduces the concept of a "franchise relationship" which covers the obli-

gations and responsibilities between a franchisor and a franchisee which result from the marketing of motor fuel under a franchise. 15 U.S.C. § 2801(2). The PMPA only covers those relationships between a franchisor and a franchisee which is either a retailer or distributor.[1] The PMPA requires the existence of a contract relating to the sale or distribution of motor fuel. *Iannuzzi v. Exxon Co. USA*, 572 F.Supp. 716, 722 (D.N.J.1983).

■ The PMPA also covers those relationships where the franchisee does not own the property but occupies the property under a "leased marketing premises" agreement.[2] The PMPA restricts the ability of an oil company to terminate a statutorily defined franchise except pursuant to specific enumerated reasons and under detailed timetables enacted in the PMPA. 15 U.S.C. §§ 2802 and 2804.

## III. ANALYSIS.

Brewer's claim under the PMPA is not premised on the fact that she is a franchisee but, rather, on her claim that there existed an executory contract which would establish her as a franchisee and that, therefore, she is entitled to the benefits and protections of the Act. Brewer claims that a precondition for the franchise was her assumption of the management position at Retail Store No. 496 and the subsequent turnaround in the performance of that station. Furthermore, plaintiff claims that Exxon promised her the dealership.

Some discrepancy exists over the representations made by Exxon to the plaintiff but it is apparently clear that the assumption of the ownership of Retail Store No. 496 was conditioned on an individual also taking ownership in Retail Store No. 614. Plaintiff's own pleadings recognize this fact in that they state that plaintiff sought rental information on both stations in order for her to effectively evaluate whether she would be able to become a franchisee.

Plaintiff would have the Court give a broad reading to the Act, covering not only existing franchise relationships but also governing franchise relationships which are only the subject of preliminary negotiation. The Act by its terms places limitations on the *termination* or *non-renewal* of franchises. *Rogue Valley Stations, Inc. v. Birk Oil Company, Inc.*, 568 F.Supp. 337, 340–41 (D.Oregon 1983). The PMPA seeks to govern "franchise relationships" which require the existence of a franchise. *Id.* at 340, 343. The Eleventh Circuit recently summarized this proposition, stating: "Unless the parties meet the statutory definition of one of these terms [refiner, distributor, or retailer], there is no coverage under the PMPA and general contractual principles govern." *Farm Stores, Inc. v. Texaco, Inc.*, 763 F.2d 1335, 1340 (1985).

■ The Court must construe the language of the statute in accordance with the purposes behind the statute. *Humboldt Oil Company, Inc. v. Exxon Company, USA*, 695 F.2d 386, 388 (9th Cir.1982). The Act is directed at protecting the buildup of goodwill by those individuals who have invested time and money into the operation of a franchise, *Rogue Valley*, 568 F.Supp. at 340, and a court must look for the "indicia of entrepreneurial responsibility and risk" which indicate that an individual is an independent dealer and businessman. *Johnson v. Mobil Oil Corporation*, 553 F.Supp. 195, 198 (S.D.N.Y.1982). The Act is intended to prevent the "appropriation of hard-earned goodwill which occurs when a franchisor arbitrarily takes over a business

---

**1.** *Distributor* is defined as "any person including any affiliate of such person who purchases motor fuel for sale, consignment, distribution to another; or receives motor fuel on a consignment for consignment or distribution to his motor fuel accounts ..." 15 U.S.C. § 2801(6). *Retailer* is defined as "any person who purchases motor fuel for sale to the general public for ultimate consumption." 15 U.S.C. § 2801(7).

**2.** *Leased marketing premises* is defined as a "marketing premises owned, leased or any way controlled by a franchisor and which the franchisee is authorized or permitted, under the franchise, to employ in connection with a sale, consignment or distribution of motor fuel." 15 U.S.C. § 2801(9).

that the franchisee has turned into a successful going concern." *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1220 (7th Cir.1982). Thus, the Act does not cover mere employees of an oil company but, rather, those individuals who are independent of the oil company and who, according to the statutory terms, are franchisees. *Id.* at 199.

■ In interpreting the statute, the Court is bound by the plain terms of the statute if they provide guidance to the resolutions of the issues before the Court. *Lewis v. United States*, 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980); N. Singer, 2A *Sutherland Statutory Construction* § 46.01 (Sands 4th ed. 1984). The language of the statute is conclusive if the terms are clear and applicable. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Furthermore, the statute here seeks the restriction of certain common law rights possessed by the oil companies, namely the right to freely enter and terminate business relationships. As the Second Circuit so aptly stated: "Strict construction is particularly appropriate where, as here, the statute in question is in derogation of common law rights." *Checkrite Petroleum, Inc. v. Amoco Oil Company*, 678 F.2d 5, 8 (1982), *cert. denied*, 459 U.S. 833, 103 S.Ct. 74, 74 L.Ed.2d 73 (1982); *see also* C. Sands, 3 *Sutherland Statutory Construction* § 61.01 (4th ed. 1974).

■ In the present matter, the plaintiff did not take on any of the risks of an entrepreneurial activity. *See Farm Stores*, 763 F.2d at 1344–45. To begin with, all the facts clearly indicate that the plaintiff was an employee of the Exxon Corporation and that, at most, she might have had a promise for a dealership. Nevertheless, there are not sufficient indicia of "independence and business risk" which are necessary to indicate that she was a franchisee and thus entitled to the benefits of the PMPA. *See Sanna v. Friendly Service Stations*, 593 F.Supp. 493, 498 (D.Conn.1983).

■ The Court would be forced to give a broad reading to the statute to entitle an individual to the protection of the Act for a relationship that has not yet come into existence. Though the PMPA is remedial in nature, *Humboldt Oil*, 695 F.2d at 389, the Court cannot let stand a cause of action premised on the Act where the clear preconditions for the protections of the Act have not been met. The Court must try to follow the expressed intent of Congress. N. Singer, 2A *Sutherland, supra*, § 46.03.

■ The Court notes that there is a difference between the creation of a franchise and the termination of an existing franchise, the PMPA governing only the latter situation. *See Wisser Co. v. Texaco, Inc.*, 529 F.Supp. 727, 733 (S.D.N.Y.1981). At least one court has already found that the failure of an oil company to abide by an "option to purchase" a franchise does not come under the Act. *Iannuzzi*, 572 F.Supp. at 723. As the *Iannuzzi* court stated: "In the absence of a written or oral agreement entitled to statutory protection as a 'franchise' under the PMPA, a party who contends that an agreement was formed by the parties' conduct may be able to look to state law for protection. But even absent an available state remedy, this court declines to transform the PMPA into a panacea for all ills suffered by those dealing with motor fuel distributors." *Id.* at 724–25. While the plaintiff may have been promised a franchise and thus may be entitled to some other common law or statutory remedy, the plaintiff has no cause of action under the PMPA.

An appropriate order will enter.

## ORDER

Upon motion of the defendant pursuant to Federal Rule of Civil Procedure 56, and in accordance with the reasons outlined in the accompanying memorandum, it is

ORDERED that summary judgment is granted to the defendant on the plaintiff's claim under the Petroleum Marketing Practices Act (the "PMPA"), 15 U.S.C. §§ 2801

*et seq.* The plaintiff's claim under the PMPA is dismissed.

IT IS SO ORDERED.