**PROVIDENT LIFE AND ACCIDENT IN-SURANCE COMPANY, and its affiliate, Provident Life and Casualty Insurance Company, Plaintiffs,**

v.

**The UNITED STATES of America and Louis W. Sullivan, M.D., Secretary of the United States Department of Health and Human Services, Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.**

**Nos. CIV–1–89–190, CIV–1–89–316.**

United States District Court,
E.D. Tennessee, S.D.

June 14, 1990.

Motion of United States to
Alter or Amend Granted;
Motion of Provident Life and
Accident Co. for Clarification
Granted;
Motion to Alter or Amend Denied
Aug. 29, 1990.

Timothy H. Bolden, Provident Life and Acc. Ins. Co., Chattanooga, Tenn., Rita M. Theisen, Charles W. Havens, III, Michael F. McBride, Leboeuf, Lamb, Leiby & MacRae, Washington, D.C., for Provident Life and Acc. Ins. Co.

Michael F. Hertz, Stephen D. Altman, Stanley E. Alderson, U.S. Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM

EDGAR, District Judge.

This consolidated action is before the Court upon the following motions:

1. Government's motion to dismiss the declaratory judgment action of Provident Life and Accident Insurance Company ("Provident") (CIV–1–89–190, Court File No. 5);

2. Government's motion for partial summary judgment as to the liability of Provident (CIV–1–89–316, Court File No. 32);

3. Provident's motion to dismiss the Government's statutory enforcement action (CIV–1–89–316, Court File No. 4); and

4. Provident's motion for summary judgment in its declaratory judgment action (CIV–1–89–190, Court File No. 54).

For the reasons set forth herein, the motions of the Government and Provident to dismiss will be DENIED. Provident's motion for summary judgment will be GRANTED IN PART and DENIED IN PART. The Government's motion for partial summary judgment will be GRANTED IN PART and DENIED IN PART.

## I. *Background*

The United States administers the Medicare program, 42 U.S.C. §§ 1395 *et seq.*, through the Department of Health and Human Services ("HHS"). Medicare is health insurance for the elderly and disabled available as a result of contributions through payroll deductions ("FICA"). Beneficiaries continue to contribute to the cost of medical care through co-payments, deductibles and premiums. Medicare is divided into two parts which differ in terms of benefits, eligibility and administration. Medicare Part A covers the hospital insurance program, including hospital expenses, skilled nursing facilities, home health care and hospice care. Medicare Part B is the supplemental medical insurance program, covering physicians' services and miscellaneous ancillary health care expenses.

HHS administers Medicare through the Health Care Financing Administration ("HCFA"), an agency of the HHS. The local Social Security offices process applications for enrollment and provide some informational back-up regarding the Medicare program. Day-to-day administration and operation of the Medicare program is handled through private insurance companies that have contracted with the Government as either Part A intermediaries or Part B carriers. Intermediaries process initial determinations on coverage. Carriers are insurance companies HCFA has chosen to process all Part B claims submitted by (1) individual beneficiaries, or (2) physicians and providers of care who have

agreed to accept Medicare assignment. 42 U.S.C. §§ 1395h, 1395u; 42 C.F.R. §§ 421.1 *et seq.* Provident is neither an intermediary nor a carrier.

The Medicare program encompasses four basic groups: (1) Persons who have reached age 65 and are entitled to receive either Social Security, widows or Railroad Retirement benefits; (2) Disabled persons of any age who have received Social Security, widows or Railroad disability benefits for 25 months; (3) Persons with end-stage renal disease ("ESRD") who require dialysis treatment or a kidney transplant; and (4) Persons over age 65 who are not eligible for either Social Security or Railroad Retirement benefits who purchase Medicare coverage by payment of a monthly premium. This lawsuit revolves around the claims of the "working aged." The "working aged" are those Medicare beneficiaries who are also active employees working for an employer of 20 or more employees. 42 C.F.R. §§ 405.340–.341.

Originally, Medicare was the primary source of payment for the medical expenses of all of its beneficiaries, with one exception, where payment has been or could reasonably be expected to be made by a workers' compensation law or plan. 42 U.S.C. § 1395y(b)(1). However, as Medicare expenditures rose dramatically, Congress turned to private insurance to cover frequently paid for items and services. Beginning with the Omnibus Budget Reconciliation Act of 1980 ("OBRA 80"), Congress sought to reduce Medicare spending and to insure the continued fiscal integrity of the Medicare program by enacting the Medicare Secondary Payer ("MSP") provisions. In general, these statutes shifted to employer health plans the responsibility for being the primary payer of the medical expenses of the "working aged." In essence, the provisions merely changed the order of payment responsibility between Medicare and employer health plans. This series of amendments to the Medicare program has given rise to suits by the Government against insurance companies to recover Medicare overpayments allegedly due under the MSP provisions. *See United*

*States v. Blue Cross and Blue Shield of Michigan,* 726 F.Supp. 1517 (E.D.Mich. 1989) (declaratory and reimbursement action); *United States v. Travelers' Ins. Co.,* No. H–89–271(JAC) (D.Conn. filed March 13, 1990) (declaratory and reimbursement action).

On March 31, 1989, Provident filed an action in this Court (CIV–1–89–190) seeking a declaration as to its and the Government's legal obligations and responsibilities under 42 U.S.C. § 1395y. Provident disputes any obligations to reimburse the Government for payments made by Medicare on behalf of the "working aged." Provident also seeks a declaration requiring the Government come up with a system to handle Medicare payments to be made by an employer plan.

The Government filed a declaratory action in the United States District Court for the District of Columbia on April 5, 1989. (CIV–1–89–316). The Government seeks a declaration that it is entitled to recover the amount of Medicare overpayments made to or on behalf of the "working aged" that should have been paid under the employer plans, which were either insured, underwritten or administered by Provident. The Government also seeks a declaration which would compel Provident to identify the beneficiaries that benefitted from such Medicare payments and those who may benefit from medicare overpayments in the future. After being transferred to this Court for resolution, this Court consolidated the two actions for purposes of both discovery and trial. (CIV–1–89–316, Court File No. 35; CIV–1–89–190, Court File No. 43).

II. *Motions to Dismiss*

■ In its motion to dismiss (CIV–1–89–316, Court File No. 4), Provident argues that the Government's statutory reimbursement action should be dismissed since it allegedly should have been filed as a compulsory counterclaim in Provident's declaratory action. Fed.R.Civ.P. 13(a) provides in pertinent part:

*(a) Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . .

■ The purpose of this rule is to prevent the fragmentation of litigation, multiplicity of actions and to conserve judicial resources. *U.S. General, Inc. v. Joliet,* 598 F.2d 1050, 1054 (7th Cir.1979); *Sue & Sam Mfg. Co. v. B–L–S Const. Co.,* 538 F.2d 1048, 1051 (4th Cir.1976); *Columbia Plaza Corp. v. Security Nat. Bank,* 525 F.2d 620, 626 (D.C.Cir.1975); *Audubon Life Ins. Co. v. F.T.C.,* 543 F.Supp. 1362, 1370 (M.D.La.1982).

Where one party does not file a compulsory counterclaim in a pending action, but, instead, files a second action based on that claim in another court, courts generally follow the "first-filed" rule. *See Computer Associates Int'l, Inc. v. Altai, Inc.,* 893 F.2d 26, 28–29 (2d Cir.1990) ("[A] district court 'may enjoin the suitor in [a] more recently commenced case from taking any further action in the prosecution of that case' if the claims presented in the second action should have been interposed as compulsory counterclaims to the claims in the suit pending before it.") (*quoting National Equip. Rental, Ltd. v. Fowler,* 287 F.2d 43, 45 (2d Cir.1961)); *Zalman v. Armstrong,* 802 F.2d 199, 203 (6th Cir.1986) ("Ordinarily, th[e] question [of whether to issue a stay] may be answered merely by examining the dates upon which the [ ] actions were filed."). Since the Government's action, however, has been transferred to this Court and consolidated with Provident's action, Provident's motion to dismiss, if granted, would not further any of the policies behind Fed.R.Civ.P. 13(a). Provident's motion to dismiss will, therefore, be DENIED.

■ The Government has filed its own motion to dismiss Provident's action (CIV–1–89–316, Court File No. 5), asking the Court to reject "[an] anticipatory suit [ ] such as this that suggest[s] forum shop-

ping and an unseemly race to the courthouse door." *Id.* at 2. In the alternative, the Government has asked the Court to stay Provident's action pending conclusion of the Government's enforcement action.

 Federal courts have the discretion to not hear a declaratory judgment action even though it is within their jurisdiction. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620, *reh'g denied,* 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed. 562 (1942). *See* 28 U.S.C. § 2201 (Supp.1990) ("In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration....") (emphasis supplied). Provident's filing a preemptive declaratory judgment action in Chattanooga does appear as an attempt to gain a "home court" advantage on the Government's probable enforcement action. *See National Emblem Ins. Co. v. Washington,* 482 F.2d 1346, 1348 (6th Cir.1973) (Discretion to hear declaratory judgment action not abused when action filed encourages "a race to the courthouse.") However, since the Government's own action has been transferred to this Court and consolidated with Provident's action, both suits may now proceed on a timely basis to trial. Additionally, judicial economy would not be served by dismissing rather than addressing Provident's action and the dispositive motions filed therein. The Government's motion to dismiss will, therefore, likewise be DENIED.

### III. *Motions for Summary Judgment*

#### A. Parties' Contentions

In its motion for summary judgment, Provident argues (1) the MSP provisions impose a duty only upon Medicare not to make payments that are excluded from coverage under the Medicare program; (2) Provident only has a duty to pay benefits pursuant to its contractual obligations not the Medicare statutes, and, if Provident has fulfilled those obligations, the Government may not recover Medicare overpayments from Provident; (3) as an administrator of an employer health plan, Provident is not an "entity responsible for payment" under 42 U.S.C. § 1395y(b)(3)(A)(ii); (4) under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.,* Provident need only pay the amount and under the terms of its contractual obligation, and the Government is limited to pursuing those remedies available under ERISA's civil enforcement scheme; (5) Provident may not be required to perform the administrative functions of the HCFA in performing "data matches;" (6) this Court may not perform the executive function of administering Medicare; (7) the Government has failed to exhaust administrative remedies and/or its own procedures for pursuing recovery; (8) the Government is limited in its recovery to subrogation claims for items or services furnished after the effective date of DEFRA (or OBRA 86 for the active disabled individual); and (9) the HCFA's new regulations effective November 13, 1989, may not be applied retroactively.

In its motion for partial summary judgment as to the issue of liability, the Government argues (1) Provident has failed to fulfill its obligation to pay claims of Medicare beneficiaries as primary, whether as insurer or administrator; (2) the Government has a statutory right of reimbursement independent of its right of subrogation in addition to a common law right of recoupment; and (3) Provident's various asserted defenses have no merit.

#### B. Medicare Secondary Payer Provisions

The Omnibus Budget Reconciliation Act of 1980 ("OBRA 80")[1] was the first in a series of legislative enactments designed by Congress to reduce federal spending in the area of Medicare. In pertinent part, the subsection states, with the OBRA 80 amendment underlined:

> (1) Payment ... may not be made with respect to any item or service to the

---

1. OBRA 80, Pub.L. No. 96–499, § 953, 94 Stat. 2599 (1980).

extent that payment has been made, or can reasonably be expected to be made promptly [2] [ ] with respect to such item or service, under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance, Any payment ... with respect to any item or service shall be conditioned on reimbursement ... when notice or other information is received that payment for such item or service has been or could be [3] made under such a law, policy, plan, or insurance [4]. [ ] [5] The Secretary may waive the provisions of this subsection in the case of an individual claim if he determines that the probability of recovery or amount involved in such claim does not warrant the pursuing of the claim.

42 U.S.C. § 1395y(b)(1) (1983) (emphasis supplied).

The intent of Congress in shifting the burden of primary coverage from Medicare to private insurance carriers was to place the burden where it could best be absorbed. "[M]edicare ha[d] served to relieve private insurers of obligations to pay the costs of medical care in cases where there would otherwise be liability under the private insurance contract." H.Rep. No. 96-1167, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 5526, 5752. Congress foresaw the possible delay in

ascertaining the existence and liability of private insurance, but found that payments made conditioned on reimbursement was the only economically feasible solution. *Id.*

The Omnibus Budget Reconciliation Act of 1981 ("OBRA 81") [6] further amended the Medicare Act by providing that payment by Medicare for certain ESRD expenses would be secondary:

(2)(A) ... [P]ayment ... may not be made ... to the extent that payment, except as provided in subparagraph (B), with respect to any item or service furnished during the period described in subparagraph (C) ... (i) has been made under any group health plan ... or (ii) can reasonably be expected to be made under such a plan.[7]

(B) Any payment ... with respect to any item or service furnished [8] [under this act] ... shall be conditioned on reimbursement ... when notice or other information is received that payment for such item or service has been made under a [group health] plan.... The Secretary may waive the provisions ... in the case of an individual claim if he determines that the probability of recovery or amount involved in such claim does not warrant the pursuing of the claim.

42 U.S.C. § 1395y(b)(2) (1983). This amendment became effective for medical care furnished on or after October 1, 1981.

The Tax Equity and Fiscal Responsibility

---

2. DEFRA, Pub.L. No. 98-369, § 2344(a)(1), 98 Stat. 494, 1095 (1984) substituted "to be made promptly" for "to be made."

3. DEFRA, Pub.L. No. 98-369, § 2344(a)(2), 98 Stat. 494, 1095 (1984) substituted "has been or could be made under such a law" for "has been made under such a law."

4. TEFRA, Pub.L. No. 97-248, § 128(a)(2), 96 Stat. 324, 336 (1982) struck out "or plan" following "service has been made under such a law."

5. DEFRA, Pub.L. No. 98-369, § 2344(a)(3), 98 Stat. 494, 1095 (1984), provided the United States with a right of action as follows:

In order to recover payment made ... for an item or service, the United States may bring an action against any entity which would be responsible for payment with respect to such

item or service (or any portion thereof) under such a law, policy, plan or insurance.... The United States shall be subrogated ... to any right of an individual or any other entity to payment with respect to such item or service under such a law, policy, plan, or insurance.

6. OBRA 81, Pub.L. No. 97-35, § 720H, 95 Stat. 357 (1981).

7. OBRA 87, Pub.L. No. 100-203, § 4036(a)(1), 101 Stat. 1330, 1330-79 (1987), substituted "can reasonably be expected to be made under such a plan" for "the Secretary determines will be made under such a plan as promptly as would otherwise be the case if payment were made by the Secretary under this subchapter."

8. TEFRA, Pub.L. No. 97-248, § 128(a)(4), 96 Stat. 324, 336 (1982), inserted "furnished."

Act ("TEFRA")[9] provided in pertinent part:

(3)(A)(i) Payment ... may not be made ... with respect to any item or services furnished in any month[10] during the [described period] to an individual who is over 64 but under 70 years of age during any part of such month (or to the spouse of such individual, if the spouse is over 64 but under 70 years of age during any part of such month[11]) who is employed at the time of such item or service is furnished to the extent that payment with respect to expenses for such item or service has been made, or can reasonably be expected to be made, under a group health plan ... under which such individual is covered by reason of such employment.

(ii) Any payment ... with respect to any item or service ... shall be conditioned on reimbursement ... when notice or other information is received that payment for such item or service has been made under a group health plan. The Secretary may waive the provisions ... in the case of an individual claim if he determines that the probability of recovery or amount involved in such claim does not warrant the pursuing of the claim.

42 U.S.C. § 1395y(b)(3)(A)(i)(1983). This amendment became effective for medical care furnished on or after January 1, 1983. It eliminated the employer's ability to have a Medicare "carve-out" provision in his health plan, excluding benefits actually paid for by Medicare. Congress, however, left establishing regulations regarding minimum amounts recoverable and the procedures for seeking recovery from employer plans to the Secretary. In fact, Congress explicitly referred to past regulations in other cases where Medicare is the secondary payer. S.Rep. No. 97–494, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Admin.News 781, 793.

TEFRA further amended the Medicare Act to provide that Medicare become the secondary payer to employer group health plans ("EGHPs") where the beneficiary was between the ages of 65 through 69. However, TEFRA created two anomalies: (1) in order for the TEFRA rules to apply to an older spouse, the active employee had to be between the ages of 65 and 70; if an active employee was under age 65 or over age 70, Medicare was the primary payer for the age 65 to 70 spouse; and (2) people who did not enroll in Medicare Part B when first eligible at age 65 were subject to certain penalties and restrictions.

The Deficit Reduction Act of 1984 ("DEFRA") provided the Government with an explicit statutory right of recovery for Medicare overpayments against certain third parties. Prior to DEFRA, Medicare would make benefit payments "conditioned on reimbursement" for which other third party insurance programs such as worker's compensation, auto or liability insurance, and employer health plans were ultimately liable for some or all of the costs. As Congress stated:

[DEFRA would] establish the statutory right of medicare to recover directly from a liable third party, if the beneficiary himself [did] not do so, and to pay a beneficiary, or on the beneficiary's behalf pending recovery where such third party is not expected to pay promptly. [DEFRA] would also permit the Secretary to recover directly from the third party whether or not the beneficiary brings suit to recover and subrogate to the United States the right of the individual or anyone else to payment from the third party. *These provisions are intended to improve the ability of the medicare program to obtain reimbursement to which it is entitled by law.* [DEFRA] would not permit medicare to bring an action against a beneficiary who had already been paid by the third party.

---

**9.** TEFRA, Pub.L. No. 97–248, § 128, 96 Stat. 324 (1982).

**10.** The Technical Corrections Act of 1982, Pub.L. No. 97–448, 96 Stat. 2365 (1982) inserted "in any month."

**11.** The Technical Corrections Act of 1982, Pub.L. No. 97–448, 96 Stat. 2365 (1982) inserted "during any part of such month."

**500**

Rather, the normal medicare rules with respect to collection of overpayments would apply.

H.R.Rep. No. 98–432, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1417 (emphasis supplied).

DEFRA amended the Medicare Act to explicitly provide the United States a right of recovery for Medicare overpayments "against any entity which would be responsible for payment" effective July 18, 1984. 42 U.S.C. §§ 1395y(b)(2)(B), (3)(A)(ii), (4)(A)(iii). DEFRA also refined TEFRA to remove the two anomalies previously discussed. Effective January 1, 1985, all employees and spouses between the ages of 65 and 70 with employer coverage had primary coverage under the employer group health plan and secondary coverage under Medicare as long as the employee was actively employed and under age 70. Also, effective September 1, 1984, DEFRA removed the late enrollment penalty and permitted elderly workers and spouses who remain covered by employer plans beyond age 65 to enroll in Medicare Part B as a new entrant whenever coverage under the group plan ceased.

The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") removed the age 70 limit on the Medicare secondary treatment of actively employed employees and spouses. It thereby completed the cycle begun with OBRA–81 whereby Congress shifted primary responsibility for health care coverage from Medicare to employer plans with respect to actively employed workers age 65 and over and all spouses, age 65 and over, of actively employed workers regardless of the age of the worker. After COBRA, EGHPs had primary payer responsibility for all actively employed employees and their spouses, regardless of their age.

The Omnibus Budget Reconciliation Act of 1986 ("OBRA 86"), effective January 1, 1987, provided that "[a] large group health plan ["LGHPs"] (one with 100 or more employees) may not take into account that an active individual is eligible for or receives benefits ... [under Medicare]." 42 U.S.C. § 1395y(b)(4)(A)(i) (the "active disabled"). Medicare thus became the second-

ary payer for any disabled employee or dependent who is under age 65 and who also has coverage under an employer plan either as an active employee or as a dependent of an active employee.

Provident argues it is not "responsible for payment" because (1) the Government has no independent right of action against it; (2) even if the Government did have a cause of action against it, it is one in subrogation, with the Government limited to the rights of the beneficiary; and (3) the Government has no right of recoupment against Provident.

The Government seeks to recover from Provident all Medicare overpayments made on behalf of the "working aged" under plans insured, underwritten, or administered by Provident. It proceeds under the following statutory language which was added to the MSP provisions by DEFRA:

> Any payment ... with respect to any item or service furnished to an individual ... shall be conditioned on reimbursement ... when notice or other information is received that payment for such item or service has been or could be made under a group health plan.... *In order to recover payment made under this subchapter for an item or service, the United States may bring an action against any entity which would be responsible for payment with respect to such item or service (or any portion thereof) under such a plan,* or against any entity (including any physician or provider) which has been paid with respect to such item or service under such plan, and may join or intervene in any action related to the events that gave rise to the need for such item or service. The United States shall be subrogated (to the extent of payment made under this subchapter for an item or service) to any right of an individual or any other entity or payment with respect to such item or service under such a plan.

42 U.S.C. §§ 1395y(b)(2)(B), (3)(A)(ii), (4)(A)(iii) (emphasis supplied).[12]

To support its interpretation of these statutes, the Government relies upon the regulations which were promulgated by the

---

**12.** This statutory language was amended effective October 1, 1989. 42 U.S.C. § 1395y (Supp. 1989), *as amended by* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–386 (codified as amended in 42 U.S.C. § 1395y (Supp. 1990)). The suits which comprise this consol-

idated case were filed in March and April of 1989. The import of Public Law No. 101–386 is, thus, not at issue in this case, and this Court expresses no opinion on the effect, if any, of the October 1, 1989, amendment.

Secretary under TEFRA, effective January 1, 1983, which state:

§ 405.344 Conditional payment and recovery of payments.

(b) If a conditional Medicare payment is made, the following rules apply:

(1) The claimant must reimburse Medicare up to the amount it paid if the claimant subsequently receives payment from the employer plan.

(2) If, for any reason, primary payment is not received from the plan, HCFA may—

(i) Bring an action against the employer or the plan as appropriate, and the beneficiary must cooperate in HCFA's action; and

. . . .

(c) HCFA may, as a prerequisite for the conditional payment, require the beneficiary to authorize it to pursue the beneficiary's rights against the employer or the plan if the beneficiary does not, and to promise to cooperate in HCFA's action.

(d) HCFA may waive recovery action if the probability of recovery or the amount involved does not warrant pursuit of the claim.

42 C.F.R. § 405.344; 48 Fed.Reg. No. 72 at 15907–908 (Apr. 13, 1983) effective January 1, 1983 (emphasis supplied).

Provident argues that the first sentence in the MSP provisions upon which the Government relies to establish a cause of action against "any entity [ ] responsible for payment" "merely sets forth the permissible parties to the cause of action created by the Medicare statutes." (Court File No. 55 at 24). The "entity [ ] responsible for payment" is the employer or the plan, not Provident, nor any insurance company. (Court File No. 47 at 22) Instead, the Government's cause of action against Provident, if any, is one for subrogation as set forth in the second sentence of the statute. In an action for subrogation, the Government would be limited to the rights of the beneficiary as set forth in the EGHP.

■■■ Courts have the primary responsibility and final authority on issues of statutory construction. Aero Mayflower Transit Co. v. I.C.C., 686 F.2d 1, 6 (D.C.Cir. 1982). Where resolution of a question of federal law turns on a statute and the intention of Congress, courts must first look to the statutory language and then to legislative history if the statutory language is unclear. Blum v. Stenson, 465 U.S. 886, 893–94, 104 S.Ct. 1541, 1546, 79 L.Ed.2d 891 (1984). In addition, regulations promulgated by the governmental body responsible for interpreting or administering the statute are entitled to considerable respect. Ford Motor Credit Co. v. Cenance, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981). Above all, the court's primary objective when interpreting a federal statute is to ascertain and give effect to Congress' intent. Turner v. McMahon, 830 F.2d 1003, 1007 (9th Cir. 1987), cert. denied, 488 U.S. 818, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988). See Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 118, 103 S.Ct. 986, 994, 74 L.Ed.2d 845 (1983); reh'g denied, 461 U.S. 911, 103 S.Ct. 1887, 76 L.Ed.2d 815 (1983); Brewer v. Exxon Corp., 626 F.Supp. 76, 79 (E.D. Tenn.1985).

■■■ This Court agrees with the Government's interpretation of the MSP provisions which would grant the Government an independent right of action against Provident, separate from the Government's right of subrogation. First, the MSP recovery statutes state that "[a]ny payment . . . shall be conditioned on reimbursement." In DEFRA, Congress explicitly provided the Government with "an action against any entity which would be responsible for payment . . . ." Congress thereafter set forth that the Government "shall be subrogated . . . to any right of an individual or any other entity to payment . . . ." The plain language of the statute itself says (1) any payment made by Medicare on behalf of the "working aged," "active disabled," or ESRD beneficiaries is conditioned upon ultimate reimbursement to Medicare "when notice or other information is received that payment . . . has been or could be made under a group health plan," (2) to recover the overpayment the Government can proceed against "any entity which would be responsible for payment," or (3) pursue any rights it may have by way of subrogation. To read the statute as solely providing the Government with a right of subrogation would give effect only to the sentence dealing with the right of subrogation. See Beef Nebraska, Inc. v. United States, 807 F.2d 712, 717 (8th Cir.1986) ("[W]here . . . 'a statute admits a reasonable construction which gives effect to all of its provisions,' [court will] decline to 'adopt a strained reading which

renders one part a mere redundancy.'") (quoting *Jareckie v. G.D. Searle & Co.*, 367 U.S. 303, 307–08, 81 S.Ct. 1579, 1582–83, 6 L.Ed.2d 859 (1961)); *United States v. Graham Mort. Corp.*, 740 F.2d 414, 419 (6th Cir.1984) ("[A] statute is to be construed to give effect to every part thereof whenever reasonably possible."); *In re Kirk*, 71 B.R. 510, 515 (C.D.Ill.1987) (Statute should not be construed in a way that renders phrase meaningless, redundant or superfluous).

Second, Congress has very clearly expressed its intent in the legislative history accompanying all of the MSP provisions. With OBRA 80, Congress pointed out how Medicare "ha[d] served to relieve private insurers of obligations to pay the costs of medical care in cases where there would otherwise be liability under the private insurance contract." H.R. No. 96–1167, 96th Cong., 2d Sess., *reprinted in*, 1980 U.S. Code Cong. & Admin.News 5526, 5752. With OBRA 81, Congress expressed its intent to shift primary responsibility for medical care furnished to ESRD beneficiaries to private health insurance plans. S.R. No. 97–139, 97th Cong., 1st Sess., *reprinted in*, 1981 U.S.Code Cong. & Admin. News 396, 735–36. TEFRA eliminated an employer's ability to have a "carve-out" provision in his health plan, and Congress intended these plans to take over primary responsibility for payment of medical care furnished to the "working aged." S.R. No. 97–494, 97th Cong, 2d Sess., *reprinted in*, 1982 U.S.Code Cong. & Admin.News 781, 792–93. With DEFRA, COBRA and OBRA 86, Congress further expressed its intent to shift primary responsibility to private health insurance, including EGHPs. All of these reports clearly establish Congressional intent to shift payment responsibility to employer health plans.

Additionally, Congress expressed its intent that the Secretary determine the procedures for recovery from private carriers.

> [T]he Committee expects the Secretary of HHS to establish in regulations rules regarding the minimum amounts estimated as recoverable and the *procedures for seeking recovery from private carriers.* Such procedures are to be similar to those currently employed by medicare in seeking recovery in workmen's compensation cases [and in other instances where medicare is the secondary payer.]

H.Rep. No. 96–1167, 96th Cong., 2d Sess., *reprinted in*, 1980 U.S.Code Cong. & Admin.News 5526, 5752; S.Rep. No. 97–494, 97th Cong., 2d Sess., *reprinted in*, 1982 U.S.Code Cong. & Admin.News 781, 793 (emphasis supplied). The regulations promulgated by the Secretary set forth the procedure which allows recovery against an employer or the plan. 42 C.F.R. § 405.-344(b) (1989). The Secretary has set forth the Government's right of subrogation in a separate section. 42 C.F.R. § 405.344(c) (1989). These regulations were in fact placed into the statute itself by DEFRA.

Since Congress expressly stated that it expected the Secretary to publish regulations regarding recovery procedures those regulations are to be given due deference by this Court. *Ford Motor Credit Corp. v. Cenance*, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981); *Quern v. Mandley*, 436 U.S. 725, 738, 98 S.Ct. 2068, 2076, 56 L.Ed.2d 658 (1978) Those regulations clearly state that the HCFA can seek recovery from an employer health plan. Provident's argument that the Government's right is limited to an employer or the plan and not the insurer is without merit since both Congress and the Secretary have used the term "plan" to refer to private *insurance* plans sponsored by an employer. Even ERISA makes clear that the proper party defendant in an action to recover benefits is the insurer. *McKinnon v. Blue Cross Blue Shield*, 691 F.Supp. 1314, 1319 (N.D.Ala.1988).

Lastly, Provident's argument as to the Government's right of subrogation only is very similar to that asserted by the defendant in *United States v. York*, 398 F.2d 582 (6th Cir.1968). The *York* court interpreted the Medical Care Recovery Act which states in pertinent part:

> In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment ... to a person ... under circumstances creating a tort liability upon some third person ... the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured ... person ... has against such third person....

42 U.S.C. § 2651(a). The *York* court rejected the argument that the United States only had a right of subrogation; instead, the *York* court held the United States had an independent right, "subrogated only in the sense that the person sued by the

Government must be liable to the injured person in tort." *Id.* at 584. Just as in *York*, the MSP provisions deal with the Government's right of recovery where it has paid for or furnished medical treatment for which another entity, a group health plan or a third person in tort, is primarily responsible. *See Jones v. St. Louis—S.F. Ry. Co.*, 728 F.2d 257 (6th Cir.1984) (Where two or more statutes deal with the same subject, they are to be read in pari materia and harmonized, if possible.)

■ Having found that the Government does have an independent right of recovery against Provident when it is "an[ ] entity which would be responsible for payment," this Court must now determine whether Provident was such an entity when it acted merely as the administrator of an employer plan.

The MSP laws since DEFRA haved stated that the "United States may bring an action against any entity *which would be responsible for payment* " under the plan. Provident says that since the employer is responsible for payment under a self-insured plan, including the cost of administering and financing the plan, the Government can only proceed against the employer as the entity responsible for payment. *See* 29 U.S.C. § 1002(1) (Supp.1990) ("employee welfare benefit plan"); 29 U.S.C. § 1081(b) (1985) ("insurance contract plan"). The Government argues that since Provident is the one making the decision as to which claims will be paid, it is included as "any entity" responsible for payment under the statutes.

Again, the Court's primary objective in interpreting the MSP provisions is to ascertain and effectuate Congress' intent. In this case, Congress intended that the HCFA be allowed to recover from "any entity which would be responsible for payment ... under such a plan." As Provident has pointed out, that entity would be the employer in the case of a self-insured plan. Where Provident is solely the administrator, merely handling the payment and claims process for the employer, it is not the "entity which would be responsible for payment" under the plan. The Secretary appears to have reached the same conclusion prior to his promulgation of new regulations in 1989. In regulations enacted in conjunction with the TEFRA legislation, the Secretary stated:

(b) If a conditional Medicare payment is made, the following rules apply:

. . . .

(2) If, for any reason, payment is not received from the plan, HCFA may—

(i) Bring an action against the employer or the plan as appropriate. . . .

42 C.F.R. § 405.344; 48 Fed.Reg. No. 72 at 15907–908 (Apr. 13, 1983. In interpreting this regulation, the Secretary explained that:

Last, § 405.344 permits the Medicare program to make conditional payments where the employer plan has denied benefits in whole or in part for any reason. If HCFA pays conditional benefits, it has the right to bring an action against the employer plan to recover those payments and the beneficiary must cooperate in the action.

In order to facilitate the recovery of conditional Medicare payments, this section provides for recovery either directly from the *insurer* or through the claimant. Accordingly, if a claimant receives payment from an *insurer* for services for which Medicare paid, the claimant would be required to refund the Medicare payment. *If for any reason payment is not made by the employer plan, HCFA may institute its own action against the insurer.* . . .

48 Fed.Reg. No. 72 at 15905 (Apr. 13, 1983) (emphasis added).

It is only recently that the Secretary has expressed the view that third party administrators as well as insurers are subject to a government recovery action. In his most recent regulations, the Secretary states:

If a Medicare conditional payment is made, the following rules apply:

. . . .

(e) *Recovery from third parties.* HCFA has a direct right of action to recover from any entity responsible for making primary payment. This includes an employer, an insurance carrier, plan, or program, and a third party administrator.

42 C.F.R. § 411.24; 54 Fed.Reg. No. 195 at 41738 (Oct. 11, 1989). As the Secretary explained:

Third party administrators, insurers and underwriters hold themselves out as having expertise in health plan administration and being knowledgeable about the

various legal and other requirements applicable to health plans. [P]arty administrators, insurers, and underwriters submit claims and make payment decisions on a day-to-day basis, often without direct involvement of the entity (such as the employer) that may *ultimately* be responsible for payment. Accordingly, it is appropriate for Medicare to recover directly from the third part administrator or insurer, and leave that entity to seek whatever recourse is available to it under is contract or other arrangement.

54 Fed.Reg. No. 195 at 41720 (Oct. 11, 1989).

However, as the Court has just stated, it interprets the statutory language "any entity which would be responsible for payment ... under such a plan" to refer only to those with *ultimate* responsibility for payment.[13] Although the Secretary's regulations are to be given due deference since he is charged with the responsibility of instituting recovery procedures, where those regulations conflict with the plain language of the statute, they need not be given effect. *See Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). Further, the Secretary's initial regulations only mention the "insurer" as a possible defendant; where, as here, the Secretary has promulgated somewhat inconsistent regulations, possibly in response to pending litigation, their weight as persuasive authority is substantially diminished. *Batterton v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977) (Varying degrees of deference are accorded to administrative interpretations based upon such factors as timing and consistency of agency's position.). *See Crounse Corp. v. I.C.C.*, 781 F.2d 1176 (6th Cir. 1986), *cert. denied*, 479 U.S. 890, 107 S.Ct. 290, 291, 93 L.Ed.2d 264 (1986); *Ohio v. Dept. of Health and Human Services*, 761 F.2d 1187 (6th Cir.1985) (While agency's interpretation of statute is entitled to deference, court bears ultimate responsibility for interpreting federal statutes.).

Even if the Secretary's newest regulations were a correct interpretation and application of the statute, they could not be applied retroactively. The Secretary of Health and Human Services is authorized to promulgate some limited rules of retro-

active effect when necessary to fulfill the statutory scheme he is charged with implementing. "In general, retroactive rulemaking should be upheld only 'when the public interest in retroactively curing the defect outweighs the harm to private interest resulting from invalid first instance rulemaking.'" *Mason General Hospital v. Secretary of Health and Human Services*, 809 F.2d 1220, 1226 (6th Cir.1987). The regulations initially promulgated by the Secretary listing only the "insurer" as a possible defendant have not been shown to be invalid, nor has the public interest been implicated sufficiently to apply the newest regulations retroactively. Absent such a showing, the Secretary's most recent regulations, if a valid interpretation of the statute, would not be effective until November 13, 1989, the stated effective date.

For recovery of Medicare overpayments made where Provident has acted solely as an administrator of a plan, the Court concludes that the Government must look to the employer or other entity who actually insures the employees covered by the MSP provisions. *Accord, United States v. Blue Cross Blue Shield of Michigan*, 726 F.Supp. 1517, 1521–22 (E.D.Mich.1989).

▮▮▮ Provident also argues that the Government has no right of recovery against Provident where Provident has already made a primary payment. The statute states:

In order to recover payment ... for an item or service, the United States may bring an action ... against any entity (including any physician or provider) which has been paid with respect to such item or service under such plan....

42 U.S.C. § 1395y(b)(3)(A)(ii) (Supp.1989). The Secretary's old regulations on this matter were quite clear: "The claimant must reimburse Medicare up to the amount it paid if the claimant subsequently receives payment from the employer plan." 42 C.F.R. § 405.344 (1989). The Secretary's newest regulations state that "[i]f the beneficiary or other party receives a third party payment, the beneficiary or other party must reimburse Medicare within 60 days." 42 C.F.R. § 411.24(h); 54 Fed.Reg. No. 195 at 41738 (Oct. 11, 1989). The HCFA has a right of recovery against any entity which has received a third party payment. 42

---

**13.** As stated *supra* at page 501, note 12, the Court's analysis here is limited to pre-October 1, 1989 statutory language.

C.F.R. § 411.24(g); 54 Fed.Reg. No. 195 at 41738 (Oct. 11, 1989). This Court concludes that where Provident has already submitted primary payment either to the beneficiary or the provider of the health services, the Government's right of action is against either the beneficiary or the provider, whoever received the payment from the plan. However, after November 13, 1989, the effective date of the new regulations, when Provident learns of Medicare's conditional payment, it now has a duty to inform HCFA of its possible primary payment responsibility, whether primary payment has been made already or not.

▉ Provident next argues that it cannot be held "responsible for payment" of primary benefits under an EGHP, whether as an insurer or an administrator, except as provided by the terms of the plan. Provident not only asserts the contractual statute of limitations often contained in the plans, but also argues that the Government is limited to the terms of the contract, including any claims procedure. In this context, Provident, once again, is arguing that the Government is limited to a claim of subrogation only. As discussed above, however, the Government's right of recovery is set forth by statute and is limited by that statute alone. It is an independent right of recovery separate and apart from that of subrogation which arises out of a contractual relationship. As such, any time limitation or claims procedure set forth in a plan will only affect the Government's right of subrogation. The Government's statutory right of recovery is to be governed by federal law, in particular the general six year statute of limitations in 28 U.S.C. § 2415(a) (Supp.1990). This Court agrees with the court in *United States v. Blue Cross Blue Shield*, 726 F.Supp. 1517, 1522 (E.D.Mich.1989), that this general statute of limitations is the most appropriate one to govern the Government's statutory cause of action. *See generally United States v. Beck*, 758 F.2d 1553, 1557 (11th Cir.1985) ("The statute of limitations applicable to suits brought by the government to recoup overpayments [ ] is 28 U.S.C.A. § 2415(a)") (citations omitted).

### C. Declaratory and Injunctive Relief

▉ In its enforcement action, the Government seeks an order compelling Provident to identify MSP "working aged" beneficiaries on a continuing basis. Provident argues that such an order would amount to this Court performing a legislative function due to Congress' failure to enact proper legislation, and an executive function due to the Secretary's failure to promulgate appropriate regulations regarding the proper identification and reporting of those "working aged" who are primarily covered under an employer group health plan. The Government counters by arguing that without such injunctive relief it will be unable to ensure compliance with the MSP laws.

Among the numerous exhibits filed with this Court in connection with this suit are two internal Provident memoranda. The first is a memorandum authored by Mr. Thomas J. Johnson, Jr., former vice president in Provident's Group Department, which states:

> My guess would be that the government is going to come back to us for adjustments on claims on which they pay primary but on which they later determined that Medicare should have been secondary. So, we will need to keep a log of any such claims and be prepared to make adjustments later on.

(CIV–1–89–190, Court File No. 47, Exhibit 8A). The second is the resulting Group Claim Bulletin prepared for distribution to Provident's claim adjustors which states:

> If the [Medicare] administrator is continuing to pay as primary we should pay as secondary and be prepared to reimburse Medicare in the future if called upon to do so. A log of these claims should be kept for ready reference. If the administrator is paying this type of claim as secondary we should go ahead and pay as primary as previously instructed.

(CIV–1–89–190, Court File No. 47, Exhibit 8B).

Provident will be instructed to produce all logs kept pursuant to these memoranda or explain their absence. Further, Provident will be instructed to produce a list of those EGHPs and their beneficiaries which would have been subject to MSP provisions. This should not be an onerous task because Provident was able to easily identify those EGHPs when the MSP provisions were passed and raise their premiums. *See* CIV–1–89–190, Court File No. 47, Exhibit 17. At this time, however, the Court will not require Provident to ascertain and supply a list of those beneficiaries who in fact benefitted from conditional Medicare payments.

### D. Effective Date of Government's Statutory Right of Action

■ Provident argues that the Government cannot recover Medicare overpayments made prior to July 18, 1984, the effective date of DEFRA, which granted the Government a statutory cause of action to recover Medicare overpayments which "could be made" under an employer health plan from "any entity which would be responsible for payment" under the plan. 42 U.S.C. §§ 1395y(b)(2)(B) and (b)(3)(A)(ii). Provident argues that the DEFRA amendment to Medicare created a completely new cause of action which was not intended to be retroactive in effect. However, the Court finds that the Government had an implied right of action under the MSP laws prior to DEFRA as established by the Secretary's regulations which allowed recovery from employer plans. Not only did the Secretary's regulations promulgated under TEFRA provide for such a right, 48 Fed. Reg. No. 72 at 13902–908 (April 13, 1983), but Congress strengthened that right by explicitly providing for it in DEFRA. The text of these regulations, along with the legislative history pertinent thereto, is set forth above under paragraph III.B. The Court relies upon its reasoning as set forth in that paragraph for holding that the Government's statutory right of action was effective January 1, 1983, the effective date of TEFRA.

### E. ERISA

■ Provident argues that ERISA, 29 U.S.C. §§ 1001 *et seq.*, prohibits the Government from obtaining payment from an employer or insured that has already paid a Medicare claim. As a plan fiduciary under an EGHP, Provident must "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan...." 29 U.S.C. § 1104(a)(1). According to Provident, a claim that Provident has already paid is no longer payable in accordance with the plan documents; as a plan fiduciary, Provident cannot, therefore, pay the claim again. Further, Provident contends that the Government is limited to pursuing any remedies it may have under ERISA's civil enforcement scheme.

As previously discussed, where Provident has already made primary payment under the terms of an EGHP, the Government's cause of action is against either the beneficiary or the provider. As to those claims where Provident has not fulfilled its primary obligation, the Government is not limited to ERISA's civil enforcement scheme. ERISA expressly provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States ... or any rule or regulations issued under any such law. 29 U.S.C. § 1144(d) (1985). ERISA, therefore, does not limit the Government's statutory right of recovery.

### F. McCarran–Ferguson Act

■ The McCarran–Ferguson Act provides that where there is a conflict between state and federal law the state law will prevail if it was enacted "for the purpose of regulating the business of insurance," unless the federal law "specifically relates to the business of insurance."

(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

15 U.S.C. § 1012 (1976).

Provident argues that the MSP laws are preempted by the McCarran–Ferguson Act which bars federal interference with state regulation of the insurance industry unless the federal regulation "specifically relates to the business of insurance." 15 U.S.C. §§ 1011 *et seq.* Provident argues that the MSP laws only tangentially affect the "business of insurance" and conflict with state regulations and are thereby preempted. The MSP laws clearly and directly relate to the "business of insurance" and

are not preempted by the McCarran–Ferguson Act. Their whole purpose was to shift the primary burden of payment for medical care for the "working aged" and "active disabled" and ESRD beneficiaries from Medicare to private employer health insurance plans.

G. HCFA's Carrier/Intermediary Manuals

■ Provident contends that the Government must initiate and exhaust its internal administrative recovery procedures before seeking judicial relief. The procedures Provident refers to are those set forth in the Intermediary and Carriers Manuals (§§ 3491.15 and 3336.12, respectively). These regulations, however, apply only to the agreement between HCFA and the intermediaries and carriers administering Medicare. These internal procedures do not affect the Government's right of recovery under the MSP provisions. These internal procedures do not confer any right or interest in Provident and do not limit any right or interest of the Government. *See Modern Plastics Corp. v. McCulloch,* 400 F.2d 14, 19 (6th Cir.1968).

An appropriate order will enter.

## ORDER

For the reasons set forth in the accompanying memorandum, the Government's motion to dismiss (CIV–1–89–190, Court File No. 5) and Provident's motion to dismiss (CIV–1–89–316, Court File No. 4) are hereby DENIED.

The Government's motion for partial summary judgment (CIV–1–89–316, Court File No. 32) and Provident's motion for summary judgment (CIV–1–89–190, Court File No. 54) are each hereby GRANTED IN PART and DENIED IN PART, as follows:

1. The Government has an independent statutory right of action against Provident apart from subrogation for Medicare overpayments made on behalf of the "working aged," "active disabled," and those suffering from End Stage Renal Disease. 42 U.S.C. §§ 1395y(b)(3) and (4) (Supp.1989).

2. The Government's statutory right of action does not extend to Provident where Provident is solely the administrator of employer group health plans ("EGHPs").

3. The Government's statutory right of action does not extend to Medicare overpayments where Provident made payment as the primary payer. After November 13, 1989, the effective date of 42 C.F.R. §§ 411.1 *et seq.* as set forth in 54 Fed.Reg. No. 95 at 41735–47 (Oct. 11, 1989), Provident has a duty to inform the HCFA of its possible primary payment responsibility when it learns that Medicare has already made a conditional payment.

4. Any statute of limitations or claims procedure language in EGHPs does not apply to the Government's statutory right of action.

5. The Employees Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), does not limit or preempt the Government's statutory right of action.

6. The McCarran–Ferguson Act does not limit or preempt the Government's statutory right of action.

7. The Government need not exhaust procedures set forth in the Health Care Financing Administration's Carrier or Intermediary Manuals before pursuing its statutory right of action under 42 U.S.C. §§ 1395y(b)(3) and (4) (Supp.1989).

8. Provident is hereby ORDERED to produce any logs kept concerning beneficiaries receiving conditional Medicare payments, in addition to a list of all EGHPs and beneficiaries that would have been subject to the Medicare Secondary Payer provisions.

9. This case remains pending as to the amount of Provident's liability to the Government.

SO ORDERED.

## MEMORANDUM

This matter is before the Court upon the Government's motion to alter or amend (Court File No. 86) and the motions of Provident Life & Accident Insurance Company ("Provident") for clarification, reconsideration and to alter or amend (Court File No. 88) the Court's memorandum and order filed June 14, 1990 (Court File Nos. 82 and 83) and for oral argument (Court File No. 94). For the reasons set forth herein, the Government's motion will be GRANTED and Provident's motion as it deals with reconsideration or alteration or amendment of the Court's order filed June 14, 1990, will be DENIED. Provident's motion for oral argument will likewise be DENIED.

Provident's motion as it relates to clarification will be GRANTED.

On June 14, 1990, this Court ruled that the Government had an independent statutory right of action under 42 U.S.C. § 1395y(b)(3) (Supp.1989) to recover conditional Medicare primary payments made on behalf of the "working aged." This right of action applies to both the "active disabled" and those suffering from End Stage Renal Disease ("ESRD") as well.[1] 42 U.S.C. § 1395y(b)(2) and (4) (Supp.1989). The reasoning applied by this Court in determining that a right of action exists under 42 U.S.C. § 1395y(b)(3) applies with equal force in interpreting these other sections dealing with conditional Medicare payments. There is one difference between the Government's statutory right of action for recovery of conditional payments made on behalf of the "working aged" and ESRD versus the "active disabled." With respect to conditional payments made on behalf of the "active disabled," the Government may only exercise its right of recovery as against "large group health plans" as that term is defined at 26 U.S.C. § 5000(b). *See* 42 U.S.C. § 1395y(b)(4)(B)(i) (Supp.1989). Otherwise, the Court's analysis and ruling as to the Government's right of recovery under 42 U.S.C. § 1395y(b)(3) and limitations thereto apply with equal force in the case of the "active disabled" and ESRD. The Government's motion to alter or amend will, therefore, be GRANTED.

Next comes Provident's motion to clarify, reconsider or alter and amend. Provident's motion to reconsider is, respectfully, DENIED. Provident's motion to alter or amend is, likewise, respectfully DENIED. In response to Provident's motion to clarify, the Court states the following: The Government has an independent right of action against Provident for conditional Medicare overpayments made on behalf of the "working aged," "active disabled," and those with ESRD whenever Provident acted as an insurer for an employer group health plan, or (in the case of the "active disabled") a large group health plan. As used by the Court, the term "insurer" applies to any form of insurance Provident undertook to provide to such a plan, wheth-

er partial or conditional. This includes minimum premium plans and final accounting and reconciliation plans, excluding only those plans where Provident provided *solely* administrative services.

Provident has represented that it may have some difficulty in complying with the Court's order regarding the production of lists of plans and beneficiaries covered by the Court's ruling. Therefore, the Court will order that the parties appear before the United States Magistrate, who will determine what data must be produced by Provident to assure compliance with this Court's order of June 14, 1990.

An order will enter.

---

**1.** Provident appears to have conceded this point when it discusses the difficulty it is having in producing the required lists and documents as

to not only the "working aged," but the "active disabled" and ESRD as well. *See* Court File No. 89 at 4–5.