**UNITED STATES of America,**
**Plaintiff,**
**v.**
**James O. GUINN, Defendant.**
**Civ. No. 163–66.**

United States District Court
D. New Jersey.
Oct. 14, 1966.

David M. Satz, Jr., U. S. Atty., Newark, N. J., Wilbur Mathesius, Asst. U. S. Atty., Trenton, N. J., for plaintiff.

Lenox, Giordano & Lenox, Trenton, N. J., Nicholas M. Giordano, Jr., Trenton, N. J., for defendant.

## OPINION

LANE, District Judge:

This case of first impression was submitted for decision on briefs. The agreed facts are that on February 16, 1963, defendant Guinn negligently operated a motor vehicle in Burlington County, New Jersey, and by his negligence caused the death of one Sherman T. Bailey and injuries to other members of the Bailey family (Mrs. Bailey and two children); that free hospital, medical and surgical care were provided Mrs. Bailey and the children at the Walson Army Hospital, Fort Dix; that they were entitled to this free medical attention as military dependents; that on March 8, 1963, Mrs. Bailey executed and delivered to plaintiff Government a written power of attorney and assignment wherein the Government was subrogated to her cause of action for hospital, medical and surgical treatments; that neither Mrs. Bailey nor plaintiff Government gave actual notice to the defendant Guinn or his insurance carrier of the subrogated interest prior to July of 1963 when Mrs. Bailey settled her and her children's claim against defendant Guinn; that releases were executed in satisfaction thereof wherein a provision covering the cost of medical treatment rendered by the Government was included; that the agreed upon sum in settlement was paid by defendant Guinn's insurance company; and that Mrs. Bailey has not paid Government for medical services rendered her and her children.

Plaintiff instituted this action under 42 U.S.C. § 2651(a) to recover from defendant the sum of $2,886.00, the amount it expended for said medical services. The statute provides:

"In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment * * * to a person who is injured or suffers a disease * * * under circumstances creating a tort liability upon some third person * * * to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall,

as to this right be subrogated to any right or claim that the injured or diseased person \* \* \* has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person \* \* \* to assign his claim or cause of action against the third person to the extent of that right or claim."

This statute creates an independent cause of action on the part of the Government allowing it to proceed for the recovery of its medical expenditures. See H.R.Rep.No.1534 87th Cong., 2d Sess. (1962), U.S.Code Congressional and Administrative News, p. 2637. In prosecuting such an action, the Government is cast in the role of a subrogee. However, from this it does not necessarily follow that the release executed by the subrogor, Mrs. Bailey, operated to extinguish the rights of the Government, subrogee.

■ A general release obtained by a tortfeasor who has knowledge or reason to know of a subrogated interest does not cut off the subrogated interest. 46 C.J.S. Insurance § 1209, at 155. This rule has been applied in New Jersey in the case of Fire Ass'n of Philadelphia v. Wells, 84 N.J.Eq. 484, 486, 94 Atl. 619, 620, L.R.A.1916A, 1280 (Ct. Err. & App. 1915) where the court stated:

"Both defendant and the railroad company knew, or are chargeable with knowledge, that the complainant had upon payment become entitled by subrogation to call upon the railroad company to reimburse it the money it paid the owner on its policy of insurance, and they could not defeat that right by any arrangement they might make without complainant's consent."

On the basis of this rationale the court found the release which had been executed did not bar the subrogee insurance company from proceeding against the tortiously liable third party. There the tortfeasor had actual knowledge of the payment by the subrogee to the insured-subrogor.

In the instant case it is not claimed that defendant tortfeasor had actual notice of the claim by the Government. However, as a matter of law, knowledge of the Act is presumed. It should also be noted that even without the presumption, the degree of lobbying and other participation by the various insurance carriers at the time of the enactment of this legislation in September of 1962 indicates that defendant's insuror had actual knowledge of the Act. In addition to knowledge of the Act, it is necessary that defendant have knowledge or reason to know of facts which would call into play the operation of the Act before defendant can be deemed to be on notice of the Government's subrogated interest. The situation presented convinces this court that defendant, in fact, had or should have had knowledge of such facts.

■ Generally, insurance carriers investigate all the facets of claimed injury prior to entering into settlement agreements. They know the length of time a claimant has spent in the hospital, the degree of injury, and the extent of treatment accorded claimant. In particular, in the instant case, it would seem of necessity that defendant's carrier knew of the fact of decedent's military status and his family's service dependency, and of the medical services rendered at the Fort Dix hospital. Indeed, any computation as to the death claim would have to be based in part on decedent's military rank or rate, longevity, and other service records. These facts together with knowledge of the Act are deemed sufficient to put defendant or his insured on notice of the Government's subrogated interest at the time that the release was executed and accordingly we hold that the release does not bar the present action by the subrogee.

The defendant contends that it would be inequitable to allow the Government to recover these expenses since this would result in double payment for the same item. The difficulty with this argument is that the medical treat-

ment was rendered gratuitously and, therefore, if the defendant's insuror has already made payment to the Baileys for this expense, it was in error in paying for an item which was non-compensable to them. It is incumbent upon the defendant or his insured to check into the elements of damages before making payment.

As a practical matter, insurance carriers do not generally pay to the injured person a sum of money to cover hospital expenses which they know the injured person received free of charge, and it may very well be that despite reference in the release to hospital expenses, the actual sum paid did not include any such computation for medical expenses. However, even if the settlement did include payments for the hospital care rendered by the Government, in light of the statute and the factual situation presented here, such payments were rendered at defendant's carrier's peril.

The plaintiff will prepare a judgment in accordance with this opinion.