UNITED STATES of America,
Plaintiff,

v.

Opal Poates JONES, Executrix of the Estate of Harrison M. Jones, Defendant (two cases).

UNITED STATES of America,
Plaintiff,

v.

Glenwood S. BYRD, Defendant.

Civ. A. Nos. 1166, 1167 (Newport News), 5758 (Norfolk).

United States District Court
E. D. Virginia,
Newport News Division.
Feb. 17, 1967.

Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., Lawrence A. Klinger, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff in Civ.A.Nos. 1166 and 1167.

Preston, Preston & Wilson, E. Page Preston and Shannon T. Mason, Jr., Norfolk, Va., for defendant in Civ.A.Nos. 1166 and 1167.

C. Vernon Spratley, Jr., U. S. Atty., William T. Mason, Jr., Asst. U. S. Atty., Norfolk, Va., Lawrence A. Klinger, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff in Civ.A.No. 5758.

Preston, Preston & Wilson, John B. Preston, Norfolk, Va., for defendant in Civ.A.No. 5758.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

These three actions involve substantially similar legal issues and are thus discussed in a joint memorandum. They pertain essentially to the constitutionality of the Medical Care Recovery Act, 42 U.S.C. §§ 2651–2653.

In Nos. 1166 and 1167, the United States seeks to recover the fair and reasonable value of hospitalization, care and treatment furnished to Enrique B. Borrego (No. 1166) and Arnoldo Valdemar (No. 1167), each members of the United States Army, who were allegedly injured on March 20, 1965, when a vehicle op-

erated by Harrison M. Jones collided with an automobile operated by Valdemar, in which latter vehicle Borrego was riding as a passenger. The claim for the fair value of medical services rendered to Borrego is in the sum of $1410.90 and, with reference to Valdemar, is only $223.00.

In No. 5758, the United States seeks to recover the sum of $203.00 as the fair and reasonable value of medical services, etc., rendered to Robert L. Quesenberry, the dependent son of a retired Navy man, Neal G. Quesenberry, which treatment was allegedly incurred on and after December 23, 1963, by reason of an accident on that date when a vehicle operated by Glenwood S. Byrd collided with an automobile in which Robert L. Quesenberry was a passenger. Prior to the institution of the present action, the father of Robert L. Quesenberry, an infant, filed suit in the Circuit Court of the City of Norfolk to recover for medical expenses and loss of services. This state court action resulted in a judgment in the sum of $2700.00, but the trial court expressly *excluded,* as an item of damage, the reasonable value of medical and hospital expenses provided and furnished by the United States to Robert L. Quesenberry. The United States had no knowledge of the action filed by the father of the infant. The Virginia law requires that an action for medical expense rendered by reason of injuries sustained by an infant be maintained in the name of the parent assuming the legal responsibility for such indebtedness.

While not a matter of record in these proceedings, it is conceded that the insurance carrier for the defendants in each case had notice of the fact that the injured parties were treated at Government hospitals. Thus we do not have the situation in which a tort-feasor, without knowledge of a possible claim for hospital and medical expenses rendered by a third party, has effected a settlement with the injured party and is now subjected to a double liability. Likewise, in the *Byrd* case, the recovery by the father, which did *not* include the fair and reasonable value of medical services furnished by the United States, affords no problem involving a double recovery. Indeed, in *Byrd,* the only remaining question is the reasonable value of such medical services as the judgment of the state court operates as an estoppel by judgment with respect to Byrd's liability.

The defendants have filed motions to dismiss contending, in substance, that the Federal Medical Care Recovery Act is unconstitutional. They point out that the statute, 42 U.S.C. §§ 2651–2653, (1) creates a new and distinct cause of action for personal injury which is not recognized by the substantive law of the state, (2) "splits" an existing cause of action contrary to Virginia law, (3) allows by assignment or subrogation the transfer of rights to the United States for which there is no valid consideration, (4) permits an assignment of a claim for personal injury in violation of the substantive law of Virginia, (5) constitutes "class legislation" and is contrary to the equal protection clause of the Fourteenth Amendment, (6) creates a different statute of limitations for claims arising out of a tort, (7) purports to alter the basic rules of evidence regarding burden of proof, and (8) is arbitrary legislation. Treating the respective motions to dismiss as motions for summary judgment, in light of the statements and concessions made at the time of argument, the motions will be denied.

We do not think it necessary to consider at length the various individual points raised by the defendants. At the outset we think it clear that the right asserted by the United States is an independent right created by federal law and, assuming without deciding that Virginia law is to the contrary, the federal law is paramount under the supremacy clause in Article VI, Clause 2, of the Constitution of the United States.

Many of the issues mentioned by defendant were previously considered and discussed in Phillips v. Trame, E.D.Ill. (1966), 252 F.Supp. 948. In that case the United States intervened as a party plaintiff and Chief Judge Juergens had before him a motion to dismiss the com-

plaint in intervention. It took Congress fifteen years to fill the gap occasioned by United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), wherein the Supreme Court ruled that only Congress had the power to create a parallel right of action to recover amounts expended for hospitalization by reason of injuries received as the result of negligence of a third party. To now hold that the Federal Medical Care Recovery Act is unconstitutional would, in effect, be tantamount to disregarding the language of the Supreme Court in its 1947 opinion heretofore mentioned.

 We also agree that the rates established by regulation, pursuant to Executive Order and 42 U.S.C. § 2652, are not subject to challenge by a defendant under the theory that they are unreasonable or arbitrary. The only limitation to this rate is its application to a particular case for, as we know, servicemen are frequently kept in a hospital for a longer period than necessary for the obvious reason that they cannot be returned to duty and it is not appropriate to send them to their homes. This is the question which was before the court in Rayfield v. Lawrence, 4 Cir. (1958), 253 F.2d 209, 68 A.L.R.2d 868. The reasonableness of the recovery by the United States under the Medical Care Recovery Act should be appropriately limited "to the same extent as though they had been rendered to a civilian without the benefit of hospitalization at Government expense". But as to the daily rate established by regulations under 42 U.S.C. § 2652(a), we hold that it is not subject to challenge.

 Other authorities discussing the history and the application of the Medical Care Recovery Act are Tolliver v. Shumate (W.Va., 1966) 150 S.E.2d 579, United States v. Guinn (D.C.N.J., 1966) 259 F.Supp. 771. Cf. United States v. Ammons (N.D.Fla., 1965) 242 F.Supp. 461. Circumstances surrounding executed releases by the injured serviceman are considered in the last two cited cases. This Court agrees that knowledge, actual or implied, by the defendant or his insurance carrier is sufficient to avoid the executed release as to the Government's claim under the Medical Care Recovery Act if information is revealed, by investigation or otherwise, that the serviceman received medical treatment at Government expense. In this connection it clearly appears from 42 U.S.C. § 2652(c) that the injured serviceman, or other person entitled to gratuitous treatment at Government expense, is not required to institute an action which would include a claim for the fair and reasonable value of services furnished or to be furnished. In many instances the difficulties presented by reason of apparent inability to find the proper person "with authority to speak and act" have resulted in pretrial orders being entered eliminating any claim of the injured party to recover for the fair and reasonable value of medical and hospital services. Such action permits the United States to thereafter file an independent suit against the tortfeasor under 42 U.S.C. § 2651(b) (2) as there is then no proceeding pending in which the injured party is claiming such right of recovery or, if the action is still pending, a complaint in intervention may be filed, if timely and without prejudicing the injured party by reason of delay.

 There is no merit to the defense as to limitation of actions. The United States is not subject to any state statute of limitations in the absence of an express intent to the contrary. Board of Commissioners of Jackson County, Kan. v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; United States v. State of Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539.

 Finally, on the question of "class legislation", it is settled that legislation which may tend to discriminate against some and favor others is not prohibited where the classification is reasonable and has a proper relation to the objects classified and the purposes sought to be achieved. Pfeiffer Brewing Co. v. Bowles (U.S. Emer. Ct. of App. 1945) 146 F.2d 1006, cert. den. 324 U.S. 865, 65 S.Ct. 914, 89 L.Ed. 1421.

The right of recovery under the Medical Care Recovery Act is not automatic. If the defendant is not legally liable for the injury or death, the United States is in no better position than the injured party or the decedent's personal representative. The primary purpose of the Act was to enable the United States, for the benefit of its taxpayers, to recover the fair and reasonable value of expenditures required by law which, prior to the passage of the Medical Care Recovery Act, had operated as a "windfall" to the injured party under the expanded decisions permitting recoveries pursuant to the collateral source doctrine.

The motions to dismiss, treated as motions for summary judgment, will be denied upon presentation of an appropriate order.