UNITED STATES of America,
Plaintiff-Appellant,

v.

Tom YORK, d/b/a York's Mobil Service, and John Hare, Defendants-Appellees.

No. 18001.

United States Court of Appeals
Sixth Circuit.

July 24, 1968.

William Kanter, Dept. of Justice, Washington, D. C. (Carl Eardley, Acting Asst. Atty. Gen., Morton Hollander, Howard J. Kashner, Attys., Dept. of Justice, Washington, D. C., Thomas L. Robinson, U. S. Atty., Memphis, Tenn., on the brief), for appellant.

Max D. Lucas, Jr., Memphis, Tenn. (J. W. Kirkpatrick, Memphis, Tenn., on the brief), for appellees; Kirkpatrick & Lucas, Memphis, Tenn., of counsel.

Before CELEBREZZE and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

The United States brought this action under the Medical Care Recovery Act, 42 U.S.C. §§ 2651–2653, to recover the reasonable value of medical care and treatment furnished to a person who was injured " * * * under circumstances creating a tort liability upon [the Defendants] * * * to pay damages * * *." 42 U.S.C. § 2651(a). Defendants' motion for summary judgment was granted by the United States District Court for the Western District of Tennessee on the ground that 42 U.S.C. § 2651(b) (2) barred this independent action since the Government had failed to intervene in a suit brought by the injured person " * * * within six months after the first day in which care and treatment [had been] furnished * * *." The United States has appealed. We reverse the judgment of the District Court and remand the cause for further proceedings.

James Woodman was treated in the United States Naval Hospital in Memphis, Tennessee, for injuries sustained in an automobile accident that ocurred on March 15, 1964, and that was allegedly caused by the negligence of one of Defendants' employees. On July 22, 1964, Woodman sued the Defendants in the General Sessions Court of Shelby County and received a judgment of $2500.00, which was subsequently settled for $2000.00. The United States had no notice or knowledge of the lawsuit in the General Sessions Court and did not intervene in that action. Although it is disputed whether Woodman attempted to recover for the cost of medical care provided by the Government, it is undisputed that he testified, and the Defendants were aware, that he had received his treatment at the United States Naval Hospital.

Prior to enactment of the Medical Care Recovery Act, the United States in most cases could not recover the value of medical care and treatment furnished to persons who had been injured by third person tortfeasors. In many cases the value of those services was a windfall to the tortfeasor since the injured person could not recover for expenses that he had not paid. Cf. United States v. Bartholomew, 266 F.Supp. 213 (W.D. Okla.1967); Feeley v. United States, 337 F.2d 924 (3d Cir. 1964); Annot., 7 A.L.R.3d 516 (1966). An attempt to establish the Government's right to such damages, roughly analogous to a husband's right to loss of services for injury to his wife, was rejected by the United States Supreme Court in United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). In a belated reaction to that decision,

Congress in 1962 passed the Medical Care Recovery Act giving the United States "* * * a right to recover from * * * [a] third person [who was liable in tort for injuries to persons treated by the United States] * * * the reasonable value of the care and treatment so furnished or to be furnished * * *." 42 U.S.C. § 2651(a).

■ Seizing upon other language in Subsection (a) of Section 2651,[1] the Defendants urge an interpretation of the Act that would give the United States only a right of subrogation or a right of assignment. All of the courts that have applied the Act are agreed, however, that the right of the United States is an independent right, subrogated only in the sense that the person sued by the Government must be liable to the injured person in tort.[2] For example, the United States' right to recover for medical expenses is not barred by a state statute of limitations that would bar an action by the injured person. United States v. Fort Benning Rifle and Pistol Club, 387 F.2d 884 (5th Cir. 1967). Nor can the Government's recovery be denied because the injured person has given a release to the tortfeasor. United States v. Greene, 266 F.Supp. 976 (N.D.Ill.1967); United States v. Winter, 275 F.Supp. 895 (E.D.Penn.1967); United States v. Guinn, 259 F.Supp. 771 (D.N.J.1966). Moreover, the legislative history of the Act makes it clear that Congress intended to give the United States an independent right.[3]

■■ Having found that the Government's right is an independent right, we also reject the Defendants' contention that the United States must give notice of its claim to the tortfeasor. The statute does not require notice and will itself serve as notice of the Government's right to the recovery sought in this suit.[4] Cf. United States v. Bartholomew, 266 F.Supp. 213, 215 (W.D.

1. "* * * and [the United States] shall, as to this right be subrogated to any right or claim that the injured or diseased person * * * has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person * * * to assign his claim or cause of action against the third person to the extent of that right or claim." 42 U.S.C. § 2651(a).

2. United States v. Merrigan, 389 F.2d 21 (3d Cir. 1968); United States v. Fort Benning Rifle and Pistol Club, 387 F.2d 884 (5th Cir. 1967); Government Employees Insurance Co. v. United States, 376 F.2d 836 (4th Cir. 1967); United States v. Housing Authority of City of Bremerton, 276 F.Supp. 966, 969 (W.D. Wash.1967); United States v. Winter, 275 F.Supp. 895 (E.D.Penn.1967); United States v. Wittrock, 268 F.Supp. 325 (E.D.Penn.1967); United States v. Bartholomew, 266 F.Supp. 213 (W.D.Okla. 1967); United States v. Greene, 266 F. Supp. 976 (N.D.Ill.1967); United States v. Jones, 264 F.Supp. 11 (E.D.Va.1967); United States v. Guinn, 259 F.Supp. 771 (D.N.J.1966). An early commentator on the Act agreed that the Act was suscepti-

ble to the interpretation urged by the Defendants. Bernsweig, Public Law 87–693: An Analysis and Interpretation of the Federal Medical Care Recovery Act, 64 Colum.L.Rev. 1257, 1265 (1964). As the cited cases indicate, however, the courts by following the legislative history have interpreted the statute otherwise in order not to "* * * frustrate the achievement of [the Act's] fiscal objectives." Bernsweig, id. at 1272.

3. The drafters of the Act were satisfied in the original version with a mere right of subrogation, realizing that the United States could not recover under a subrogation right in states where the "collateral source rule" did not apply. S.Rep.No. 1945, 87th Congr. 2d Sess., U.S.Code Cong. & Admn.News, pp. 2643–44 (1962) (Letter of Byron R. White, Deputy Attorney General to Hon. Emanuel Celler dated August 1, 1961). The House of Representatives amended the bill, however, by adding the words "* * * [the United States] shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right * * *"

4. In this case the Defendant had actual knowledge that Woodman's medical care was furnished by the Government. In any event, by proper inquiry or discovery procedures a defendant can protect him-

Okla.1967) supra. A more sophisticated argument, however, has been devised for the instant situation. Defendants argue that when suit is brought by the injured person within six months after the first day of treatment the United States can protect its right to a later independent action only by obtaining an assignment from the injured person and giving notice of the assignment to the tortfeasor. The statute expresses no such intention; an assignment is provided as an alternative method of enforcing the Government's right.[5] Without clear language in the statute so indicating, we reject the argument that an alternative method of enforcement can become the exclusive method by which this independent right can be enforced.

In the end, the Defendants are willing to concede all that has been said before but, nevertheless, contend that although the Government may have a right its remedy is barred by Subsection (b) of Section 2651. Subsection (b) provides:

"The United States may, to enforce such right, (1) intervene or join in any action or proceeding brought by the injured or diseased person, * * * against the third person who is liable for the injury or disease; or (2) if such action or proceeding is not commenced within six months after the first day in which care and treatment is furnished by the United States in connection with the injury or disease involved, institute and prosecute legal proceedings against the third person who is liable for the injury or disease, in a State or Federal court, either alone * * * or in conjunction with the injured or diseased person * * *."

Clause (2) raises the troublesome question in this case: if such action is commenced within the described six months period and the United States does not intervene, is the Government then forever barred from maintaining an independent action for the reasonable value of the medical care and treatment furnished to the injured person? Several Federal District Courts have held that the Government is barred in such a situation. United States v. Housing Authority of the City of Bremerton, 276 F.Supp. 966, 969 (W.D.Wash.1967); United States v. York, 261 F.Supp. 713 (W.D.Tenn.1966) (the instant case); United States v. Merrigan (D.N.J.1967, Civil Action No. 835–65 unreported) reversed 389 F.2d 21 (3d Cir. 1968). At least one District Court, however, has disagreed with that interpretation of the statute, United States v. Wittrock, 268 F.Supp. 325 (E.D.Penn.1967); as has the Third Circuit. United States v. Merrigan, 389 F.2d 21 (3d Cir. 1968). We also disagree with that interpretation of the Act.

In effect, the Defendants assert that Subsection (b) serves as a partial statute of limitations on the exercise of the right created in the United States by the Act. If the enforcement provisions of Subsection (b) were exclusive, the argument of the Defendants would have some validity. However, exclusiveness does not follow from the necessary implications of the words used in Subsection (b), and nothing in the legislative history of the Act indicates that, by providing certain procedures of enforcement, Congress intended to exclude all other methods of enforcement that would normally be available to the Govern-

self from any double recovery of medical expenses. See Bernsweig, supra note 2 at 1271.

5. An assignment or subrogation right would be ineffective in states where the "collateral source rule" does not apply. See United States v. Bartholomew, 266 F. Supp. 213 (W.D.Okla.1967). So if Defendants' interpretation is accepted, the tortfeasor in such states would escape liability when the United States failed to intervene in an action brought within six months of treatment even if the United States had been given an assignment. Such disparate treatment was one result that the House of Representatives sought to avoid by its amendment. See also Bernsweig, supra note 2 at 1264.

ment.[6]  First, the language of the enforcement provision is permissive, not mandatory.  Cf. United States v. Wittrock, 268 F.Supp. 325, 327 n. 7 (E.D. Penn.1967).  Second, prior to enactment of the Federal Medical Care Recovery Act, certain Government agencies had been recovering medical expenses in cases of third person tort liability; and the specific retention of those methods of recovery shows that Congress intended to give the United States as wide a range of methods of recovery as possible.[7]

Furthermore, in the case of this statute the express inclusion of certain procedures in Subsection (b) is even less persuasive of implied exclusion of all other procedures, because both clause(1) and clause (2) were necessary to effectuate certain specific desires of Congress.  Cf. Springer v. Government of Philippine Islands, 277 U.S. 189, 48 S.Ct. 480, 72 L.Ed. 845 (1928).  Clause (1) was necessary in order to give the United States an absolute right to intervene, not subject to the discretion of the trial judge.  Rule 24(a), Federal Rules of Civil Procedure; see 4 Moore, Federal Practice Par. 24.10[5].  Clause (2) was required to delay the exercise of the Government's right of action for a reasonable time to give the injured person an opportunity to bring the necessary action if he so desired;[8] and that was the

only limitation on the Government's right to bring an independent action that was intended by Clause (2).  Nothing in the legislative history evinced concern for the tortfeasor or for the possibility that the tortfeasor might be subjected to multiple litigation.

■  If no enforcement procedure had been provided, the Attorney General by virtue of his office could protect the interest of the United States in the usual way, by bringing an action in an appropriate court.  United States v. San Jacinto Tin Co., 125 U.S. 273, 279, 8 S.Ct. 850, 31 L.Ed. 747 (1888); Sanitary District of Chicago v. United States, 266 U.S. 405, 425–426, 45 S.Ct. 176, 69 L.Ed. 352 (1925).  When a specific interest and right has been conferred upon the United States by statute, the remedies and procedures for enforcing that right are not to be narrowly construed so as to prevent the effectuation of the policy declared by Congress.  Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967).  The purpose of Clause (2) was to insure that the Government, by exercising its right, would not impair the injured person's right to recover for his own damages.  It was not intended to serve as a bar to the Government's later exercise of its own inde-

---

6.  Defendants contend that we should apply the canon of statutory construction that statutes in derogation of the common law should be strictly construed.  But opposed to this canon of construction are the canons that statutes of limitations against the Government will not be easily implied, E. I. DuPont De Nemours & Co. v. Davis, 264 U.S. 456, 44 S.Ct. 364, 68 L.Ed. 788 (1924); Independent Coal and Coke Co. v. United States, 274 U.S. 640, 47 S.Ct. 714, 71 L.Ed. 1270 (1927), and that ambiguous language will justify the courts in looking to the legislative history of a statute.  United States v. Public Utilities Commission of California, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020 (1953).  This conflict indicates that the canons of construction are at best only rough guides to aid the courts in reaching an interpretation that will best effectuate the purpose of the statute under consideration.

7.  See 42 U.S.C. §§ 2651(c) and 2653.  S. Rep.No. 1945, 87th Congr. 2d Sess. U.S. Code Cong. & Admin.News, pp. 2642–2643 and 2647–2648 (1962).  Prior statutes left unaffected included Federal Employees' Compensation Act, 5 U.S.C. § 8131; Railroad Unemployment Insurance Act, 45 U.S.C. § 362(o); Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 933.

8.  S.Rep.No. 1945, 87th Cong., 2d Sess., U.S.Code Cong. & Admin.News, p. 2652 (1962); H.R.Rep.No. 1534, 87th Cong., 2d Sess. (1962).  Other provisions of the Act show the same paramount concern of Congress that the injured person's right of action not be impaired by any Governmental action.  See 42 U.S.C. § 2652(b) and (c).

pendent right. We will not place such a restrictive construction on the Act without clear language in the statute compelling such a result.

Reversed and remanded.