UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1902

MARY A. HOLBROOK, MARY E. HOLBROOK,
INDIVIDUALLY AND AS MOTHER AND
NEXT FRIEND OF DANIEL M. HOLBROOK,

Plaintiffs, Appellants,

v.

ANDERSEN CORPORATION, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Boudin, Circuit Judge,

Campbell, Senior Circuit Judge,

and Stahl, Circuit Judge.

James M. Campbell with whom Michelle I. Schaffer, Ronald M.

Davids and Campbell & Associates were on brief for appellants.

Margaret D. McGaughey, Assistant United States Attorney, with

whom Richard S. Cohen, United States Attorney, and Paula D. Silsby,

Senior Litigation Counsel, were on brief for appellees.

June 30, 1993

BOUDIN, Circuit Judge. The Holbrooks' two-and-a-half-

year-old son, Daniel Holbrook, sustained severe and permanent

injuries after falling through a second-floor window of the

Holbrooks' apartment. Because plaintiff Mark Holbrook was

employed by the United States Navy at the time of the

accident, the United States paid 80 percent of the costs of

Daniel's medical treatment under the Dependent's Medical Care

Act, 10 U.S.C. 1071 (the "Dependent's Act"). The Holbooks

then sued Andersen Corporation, the manufacturer of the

window and screen, alleging negligence and product liability.

The Holbrooks notified the United States of the initiation of

the suit, but the United States did not intervene.

Three days before trial, the Holbrooks and Andersen

settled the suit for $725,000.1 This amount was far less

than the complaint had sought, and the amount presumably

reflected the parties' judgment about likelihood of success;

Daniel Holbrook had been unsupervised at the time of the

accident, and there were no witnesses. The United States was

not a party to the settlement, nor did the settlement

agreement provide that any money should be paid by Andersen

to the United States in respect of the medical costs that the

government had incurred. The settlement agreement did

1Attorneys' fees and expenses absorbed a large portion
of this amount ($391,505.50). Of the balance, the Holbrooks
were allotted a portion ($50,000) for direct expenses with
the remainder to be held in trust for Daniel.

-2-

provide, however, that the Holbrooks would indemnify Andersen

if the latter were held liable to the United States.

In its order approving the settlement, the district

court sua sponte ordered that $139,028 of the settlement

proceeds be placed in an escrow account to satisfy potential

liens of the United States or others.2 Six months later the

United States moved to compel disbursement to it of the funds

held in escrow, and shortly thereafter the United States

formally moved to intervene in the action; the Holbrooks

opposed both motions. The court ultimately granted both

motions and after a recalculation of the government's actual

payments ordered disbursement to the United States of

$122,834. The balance of the escrow was remitted to the

Holbrooks. The Holbrooks appeal, arguing that this

disbursement was not authorized by law.

In claiming a right to a portion of the Holbrooks'

settlement, the United States relies solely on the Federal

Medical Care Recovery Act, 42 U.S.C. 2651 ("the Recovery

Act"). This statute grants to the government a right to

recover from a third-party tortfeasor the reasonable value of

medical services that the government has furnished under the

2Local rules required court approval of settlements of
claims brought on behalf of minor children. The court's
escrow order may have been prompted by the Holbrooks'
statement in their motion for court approval of the
settlement that the Navy had paid 80 percent of the medical
bills and that the total medical expenses amounted to
$139,028.

-3-

Dependent's Act (or under other similar statutes).

Specifically, the Recovery Act provides:

In any action in which the United States is
authorized or required by law to furnish hospital,
medical, surgical, or dental care and treatment . .
. to a person who is injured or suffers a disease,
after the effective date of this Act, under
circumstances creating a tort liability upon some
third person . . . to pay damages therefor, the
United States shall have a right to recover from
said third person the reasonable value of the care
and treatment so furnished or to be furnished and
shall, as to this right be subrogated to any right
or claim that the injured person . . . has against
such third person to the extent of the reasonable
value of the care and treatment so furnished or to
be furnished.

42 U.S.C. 2651(a). The statute then sets forth procedures

for the government's enforcement of this right of recovery.

The United States may "intervene or join in any action or

proceeding brought by the injured or diseased person" or, if

such an action is not commenced within six months, may

"institute and prosecute legal proceedings against the third

person who is liable for the injury or disease." Id.

2651(b).

The parties direct their arguments in this case chiefly

at the procedural component of the statute, section 2651(b).

The Holbrooks argue that the United States' motion to

intervene came too late, because it was not filed until after

the Holbrooks' suit against Andersen was resolved by

settlement. The United States responds by pointing to case

law providing that the procedural devices set forth in

-4-

section 2651(b) are not exclusive and that a motion to

intervene may be filed "at any time," even after entry of

judgment. United States v. Merrigan, 389 F.2d 21, 25 (3d

Cir. 1968); see also United States v. York, 398 F.2d 582,

585-86 (6th Cir. 1968). We think that the crucial issue is

not when the government may intervene but rather whom it may

proceed against once it makes an appearance in the case.

The statute grants to the United States a right to

recover "from [the] third person" who is liable in tort for

the injury. It makes no provision for the United States to

recover against the injured party or from funds

unconditionally paid to the injured party by the tortfeasor.

Moreover, the United States' right to recover under the

statute is contingent upon "circumstances creating a tort

liability upon some third party." 42 U.S.C. 2651(a);

Thomas v. Shelton, 740 F.2d 478, 481 (7th Cir. 1984)

(tortfeasors' "liability under the Medical Care Recovery Act

depends on their being found liable . . . under the tort law

of the pertinent state"); United States v. Trammel, 899 F.2d

1483, 1488 (6th Cir. 1990) (same). There has been no such

determination in this case.

"All courts which have considered the question have

agreed that the statute gives the United States an

independent right of recovery against the tortfeasor . . . ."

United States v. Housing Authority of Bremerton, 415 F.2d

-5-

239, 241 (9th Cir 1969). Thus, the government's right is not

extinguished by the injured person's settlement and release

with the tortfeasor. See, e.g., United States v. Theriaque,

674 F. Supp. 395 (D. Mass. 1987). Indeed, the government's

right against the tortfeasor under the Recovery Act is not

defeated even by certain restrictions that might bar the

injured person's own recovery.3 There is thus no necessity

for the United States to look to the injured party's

settlement for compensation.

If the United States wishes to invoke the Recovery Act

to recover its medical payments in this case, we think that

under the plain language of the statute it must proceed

against Andersen and seek to establish Andersen's tort

liability. The language of the statute does not authorize

the government to collect under the Recovery Act out of a

settlement negotiated between the injured person and the

tortfeasor. Nor is there any case law that permits such a

recovery absent an express agreement designating for the

government a portion of the settlement.

This case does not involve the peculiar facts of

Cockerham v. Garvin, 768 F.2d 784, 787 (6th Cir. 1985).

3See Heusle v. National Mutual Ins. Co., 628 F.2d 833,

837 (3d Cir. 1980) (procedural restrictions); United States

v. Moore, 469 F.2d 788, 790 (3d Cir. 1972) (state doctrine of

interspousal immunity), cert. denied, 411 U.S. 905 (1973);

United States v. Gera, 409 F.2d 117, 119-20 (3d Cir. 1969)

(state statute of limitations).

-6-

There the Sixth Circuit allowed recovery out of settlement

proceeds where "[t]he [injured person] and tortfeasor

specifically agreed that part of the money paid over to the

[injured person] would be held in escrow pending a claim by

the [United States] for specific medical bills . . . ." The

court treated the escrow as giving the government

"beneficiary" status akin to that enjoyed by the third-party

beneficiary of a contract. See id. at 784. The court also

decided that on remand the government's share of the

settlement should be determined by "equitable

considerations," taking account of any discounted settlement

accepted by the victim and the litigation costs he had borne.

Id. at 787. The government does not argue that in this case

there was any third-part beneficiary agreement between the

Holbrooks and Andersen.

Rather, the United States says that its present claim

has been misunderstood. It argues that its attempt to

recover from the escrow is not a claim against the Holbrooks

but rather, consistent with the Recovery Act, is a claim

against Andersen, which supplied the funds. This is a word

game that does not reflect the reality of the situation:

Andersen has paid the settlement amount to the Holbrooks in

exchange for a release of claims against it. The money

belongs to the Holbrooks and their son quite as much as Mr.

-7-

Holbrook's salary paid to him by the Navy belongs to him and

not to the Navy which is the source of the funds.

The best argument for the United States is based on

policy considerations. Andersen's payment to the Holbrooks

is not technically an admission of liability, Fed. R. Evid.

408, but in reality the settlement reflects a judgment by

Andersen that there is a risk of liability and that the case

is worth that much to settle. But to the extent the

tortfeasor is liable to the Holbrooks under tort law--an

issue mooted by the settlement--it is also liable to the

United States for any medical costs paid by the latter.

Of course the United States still has a right to sue

independently and, if it can prove liability, to collect its

full medical expenses with no settlement discount at all.

But everyone knows that if fault is debatable and the

tortfeasor settles with the injured party, the chances for

the United States to recover may be much reduced. Any lawyer

would prefer to try a tort case in which the co-plaintiff is

an injured two-and-a-half-year old, especially where a

verdict for the child virtually requires an award for the co-

litigant.

What is even more troubling is that the tortfeasor has

an incentive in such a case to pay the injured party

something extra in settlement precisely in order to uncouple

the two claims. Once the United States is left to litigate

-8-

on its own, it not only has no sympathetic victim to take the

lead before the jury but must bear its own litigation

expenses. And, if (as here) the alleged tortfeasor has an

indemnity agreement with the victim, making the latter

responsible for any award to the United States, the victim or

witnesses associated with the victim now have an economic

incentive to minimize the tortfeasor's fault when the United

States sues.

These policy concerns are not overwhelming: the United

States is not without litigation resources, in this case it

has the benefit of much discovery already done by the

Holbrooks, and perjury laws cabin the witnesses' testimony.

Had it anticipated the problem, Congress might well have

provided a legislative solution along the lines of the

Cockerham case: The Recovery Act could easily have said that

if the tortfeasor and victim settle, the United States can

claim for its medical costs an "equitable" share of the

settlement to be determined by the court. But Congress did

not to so--it cannot anticipate every problem--and so the

question posed is whether the courts should do the repair

work themselves.

The answer here, we think, is no. The statute does not

literally forbid this "equitable share" solution, but neither

do the provisions of this reasonably detailed statute provide

for any such recovery against the victim or the settlement

-9-

fund. Nor can we be certain that Congress would wish to

impose an "equitable share" solution; perhaps it might pick a

quite different solution or no solution at all. There is no

magic formula to say when courts should do patch-work repairs

to legislation, but in our view this is not such a case. If

Congress wants a solution, it is best for it to tailor its

own.

The judgment of the district court is reversed.

-10-