**MONTGOMERY, Atty. Gen., Appellee,**

v.

**JOHN DOE 26 et al., Appellants.**

[Cite as *Montgomery v. John Doe 26* (2000), 141 Ohio App.3d 242.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 00AP–304, 00AP–316 and 00AP–351.

Decided Dec. 21, 2000.

*Betty D. Montgomery*, Attorney General, *Stephen P. Carney* and *Elizabeth Luper Schuster*, Assistant Attorney General, for appellee.

*Clayton D. Wood*, pro se.

*Ralph C. Kimpton*, pro se.

*Thomas C. Gilbert*, pro se.

PEGGY BRYANT, Judge.

Defendants-appellants, John Doe 32, 54, and 98, appeal from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of plaintiff-appellee, Ohio Attorney General, Betty D. Montgomery. John Doe 32 assigns the following error:

"The trial court abused its discretion when it found that the statute of limitations had not run in this case and granted appellee's motion for summary

judgment; thereby denying appellant's right to due process and equal protection of law."

John Doe 54 assigns the following errors:

"I.   The trial court erred in finding in plaintiff's favor solely on plaintiff's claim of subrogation rights as per R.C. § 2743.72(A).

"II.   The trial court erred in its ruling that the statute of limitations had not started to run due to defendants being incarcerated at the time of the subrogation claim arose.

"III.   The trial court erred in ignoring that the plaintiff's claim was barred by the doctrine of laches.

"IV.   The trial court erred in stating that there was not any genuine issues of material fact."

John Doe 98 assigns the following errors:

"I.   The trial court is without subject matter jurisdiction in this action against appellant.

"II.   The trial court's decision that this action against appellant is not barred by the statute of limitations is contrary to law.

"III.   The trial court erred when it considered supporting documents admitted into the record with appellee's summary judgment motion that were not served on the appellant, which denied appellant a meaningful opportunity to present objections to the unserved supporting documents and the due process and equal protection of law guaranteed by the Fifth, and Fourteenth Amendments of the U.S. Constitution and Sections 2 and 16, Article I of the Ohio Constitution.

"IV.   The trial court abused its discretion when it denied appellant's motion for discovery, motion compelling discovery and answers to interrogatories, which denied appellant the due process and equal protection of law guaranteed by the fifth and fourteenth amendments to the United States Constitution and Section 2 and 16, Article I of the Ohio Constitution.

"V.   The trial court erred by ruling on appellant's defense of "laches" when neither the appellee or the appellant specifically moved for summary judgment on appellant's defense of laches, thereby, denying appellant due process of law provided by the Fifth and Fourteenth Amendment to the U.S. Constitution, and Section 2 and 16, Article I of the Ohio Constitution, which provides due process and equal protection of laws.

"VI.   The trial court erred by failing to perform its mandatory duty to thoroughly examine all appropriate materials on the record before ruling on the summary judgment motion and committed reversible error.

"VII. The trial court's decision sustaining appellee's summary judgment motion is contrary to law pursuant to Civil Rule 56 standards, which denied appellant due process and equal protection of law.

"VIII. The trial court erred by issuing an order allowing the state to receive or recover appellant's money that is not benefits or advantages nor income and is exempt from collection when the state has no right to receive or recover said money.

"IX. The trial court abused its discretion in denying appellant's motions to amend and supplement appellant's answer to plaintiff's complaint."

The underlying facts are largely undisputed. By July 7, 1987, all three John Does were convicted of unrelated murders. The families of all three victims applied for reparations from the Crime Victims Fund ("fund") pursuant to R.C. 2743.56. The fund is statutorily created to allow victims of violent crimes to seek reparations from the state. By December 29, 1987, each family had received an award of reparations from the fund. On August 20, 1997, pursuant to R.C. 2743.72, the state filed suit against defendants, among others, in an attempt to recover the monies paid by the fund to the victims' families. The state moved for summary judgment, and defendants responded that the state's claims were barred by the statute of limitations. On February 25, 2000, the trial court granted the state's motion for summary judgment, finding the statute of limitations had tolled during defendants' incarceration.

■ Appellate review of a trial court's granting summary judgment is *de novo*. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158, ("We review the judgment independently and without deference to the trial court's determination."). When confronted with a motion for summary judgment, a court must construe the evidence most strongly in favor of the non-moving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 275–276. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095,

paragraph three of the syllabus (*Celotex v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

Because John Doe 32's single assignment of error, John Doe 54's first, second, and third assignments of error, and John Doe 98's first, second, fifth, and seventh assignments of error are interrelated, we consider them jointly. They contend the statute of limitations, the equitable doctrine of laches, or both bar plaintiff's claim for subrogation. Plaintiff counters that (1) the statute is not a traditional subrogation statute because it grants the state an independent cause of action, (2) generally worded statute of limitations do not apply to the state, and (3) that the defense of laches does not apply.

R.C. 2743.72(A) is at the heart of the issues raised, and provided at all times relevant to this appeal:

"If an award of reparations is made under sections 2743.51 to 2743.71 of the Revised Code, the state, upon the payment of the award or a part of the award, is subrogated to all of the claimant's rights to receive or recover benefits or advantages for economic loss for which an award of reparations was made from a source that is a collateral source or would be a collateral source if it were readily available to the victim or claimant. The claimant may sue the offender for any damages or injuries caused by the offender's criminally injurious conduct and not compensated for by an award of reparations. The claimant may join with the attorney general as co-plaintiff in any action against the offender."

The statute is triggered when an award of reparations is made from the fund pursuant to one of the enumerated sections of the Revised Code. Here, the statute became operative when the victims of defendants' crimes received reparations from the fund pursuant to R.C. 2743.55(C): on July 22, 1987 with respect to John Doe 32, on December 29, 1987 with respect to John Doe 54, and on March 10, 1983 with respect to John Doe 98.

Given that the fund paid reparations to the families of all three of the defendants' victims, the state became subrogated to the rights of the victims' family members to receive or recover benefits, as provided in R.C. 2743.72(A). Because the state became subrogated to the rights of the victims' family members at the time the payment from the fund occurred, the issue resolves to what rights they, the claimants, could recover for their losses.

The claimants here would have had the right to pursue legal remedies under tort law, including wrongful death. Given those options, the applicable statute of limitations would have expired before the current action was initiated unless the statute of limitations was subject to a tolling provision. While the trial court concluded that the statute of limitations was tolled under R.C. 2305.15(B) for the time defendants were imprisoned, on appeal plaintiff asserts that statutes of

limitation do not run against the state. If plaintiff prevails under the theory that statutes of limitation are inoperative against the state, then the tolling statute becomes irrelevant to our determination. For that reason, we first consider plaintiff's argument.

Statutes of Limitation

■ The general rule in Ohio is that statutes of limitation do not run against the state. See *Ohio Dept. of Transportation v. Sullivan* (1988), 38 Ohio St.3d 137, 527 N.E.2d 798 (holding that the state is exempt from operation of a generally worded statute of limitation). Ohio is not unique in this regard as "[f]ederal and state courts throughout the United States seem to have uniformly held that the federal government and state governments are not bound by the terms of a general statute of limitation." *Id.* at 138, 527 N.E.2d at 799; see, also, *Guaranty Trust Co. v. United States* (1938), 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224. The rule comes from the Latin phrase "nullem tempus occurit regi" which loosely translated means that time does not run against the king. The rationale underlying the rule is the "great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *United States v. Hoar* (C.C.D.Mass.1821), 26 F.Cas. 329.

Despite the general rule, defendants contend that statutes of limitation apply to the state when the state's cause of action is based on rights attained through subrogation. Defendants assert that subrogation actions are derivative in nature and thus a subrogee cannot succeed to a right not possessed by its subrogor. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 537 N.E.2d 624; *Galanos v. Cleveland* (1994), 70 Ohio St.3d 220, 638 N.E.2d 530. Thus, they contend that if the statute of limitations would time-bar an action by the claimants, it would also time-bar plaintiff's action.

Defendants' contentions find support in *Ohio Dept. of Human Serv. v. Kozar* (1995), 99 Ohio App.3d 713, 651 N.E.2d 1039, where the Ohio Department of Human Services ("DHS"), filed a reimbursement claim for Medicaid benefits expended on behalf of an individual that Kozar fatally injured in an automobile accident. The state brought its claim pursuant to R.C. 5101.58, which gave a right of subrogation to DHS. *Kozar* concluded that "[s]ince the estate's claim against Kozar was time-barred, any claim asserted by the state, as subrogee, is likewise time-barred under the four-year statute of limitations applicable thereto." *Id.* at 716, 651 N.E.2d at 1041.

In *United States v. York* (C.A.6, 1968), 398 F.2d 582, the court, faced with a fact scenario similar to the *Kozar* case, held that the United States' claim was not time-barred because the federal statute at issue was not a typical subrogation statute, but instead created an independent cause of action for the United States. While reaching opposite results, both *Kozar* and *York*, in effect, determined that

the statute of limitations would run against the state if the state's cause of action was based solely on the typical theory of subrogation: if the court in *York* believed the statute of limitations did not run against the sovereign even when the sovereign is in the position of subrogee, then its conclusions regarding an independent cause of action would have been unnecessary. See, also, *United States v. Fort Benning Rifle & Pistol Club* (C.A.5, 1967), 387 F.2d 884, 885.

Given the foregoing, the essential issue is whether R.C. 2743.72 is a typical subrogation statute, or whether it creates an independent cause of action for the state. In *Kozar*, the court found the plain language of the statute reflected a typical subrogation statute that did not create an independent right in the state. As the court explained, R.C. 5101.58 uses the term "subrogation" in its conventional sense: "The acceptance of aid * * * gives a right of subrogation to the department of human services * * *" and does not create an independent right of recovery as did the federal statute at issue in *York*. *Kozar, supra*, at 717, 651 N.E.2d at 1041.

Conversely, in *York*, the Sixth Circuit concluded that the federal statute created an independent right to recovery in the sovereign because the statute gave "the United States ' * * * a right to recover from * * * (a) Third person (who was liable in tort for injuries to persons treated by the United States) * * * the reasonable value of the care and treatment so furnished or to be furnished * * * and shall, as to this right be subrogated * * *': [to the rights of the injured party]." *York, supra*, at 584, citing Section 2651(a), Title 42, U.S.Code. Thus, the court, based on the text of the statute, concluded that the right of the United States was an independent right.

While Section 2651(a) subsequently subrogated that independent right, Section 2651(a) cannot be considered a typical subrogation statute. The injured party in a Section 2651(a) action does not incur any loss regarding medical expenses: the United States is required by law to provide treatment at no charge. Consequently, the injured party has no right to recover the reasonable value of treatment and care because the injured party never paid for any treatment or care. Thus, if the statute were truly a subrogation statute, under no circumstances would the United States ever be allowed to recover the value of the care it provided, as the injured party has no right of recovery to which the United States can be subrogated. The same cannot be said for the Ohio statute because the individual that receives reparations from the fund for a loss sustained and has a cause of action against the tortfeasor.

Moreover, even in the absence of the problem noted above, the text of the statute at issue in *York* is ambiguous in a way that the Ohio statute is not. In purporting to create an independent right and a right of subrogation, the statute becomes ambiguous. While the statute is ambiguous, a review of the legislative

history overwhelmingly supports the conclusion that the intent was to create an independent right in the United States. See *York, supra.*

Similar to the statute at issue in *Kozar*, R.C. 2743.72(A) uses the term "subrogation" in its traditional sense: the "state, upon the payment of an award or part of the award, is subrogated to all of the claimant's rights * * *." Unlike the statute at issue in *York*, R.C. 2743.72 never mentions the creation of a "right" in the sovereign. To the contrary, it specifically refers only to the "claimant's rights" that the state acquires through subrogation. Because R.C. 2743.72 is a traditional subrogation statute, the statute of limitations applies against the state. See, also, *Ohio Crime Victim's Fund v. Gray* (Nov. 9, 2000), Franklin App. No. 00AP–218, unreported, 2000 WL 1678027.

Plaintiff, however, points to language in R.C. 2743.72 and asserts an independent right is created because the fund can seek reimbursement from a collateral source or any source that "would be a collateral source if it were readily available to the victim or claimant." R.C. 2743.72(A). That right, however, exists only after the state is "subrogated to all of the claimant's rights," and the state can only recover from a collateral source if the claimant would have had a right of recovery from the collateral source. Far from creating an independent right in the state, this language simply reconfirms that the state's right to recovery is based solely on the theory of subrogation.

Plaintiff further asserts our interpretation is incorrect under *Crittendon v. Crittendon* (1992), 82 Ohio App.3d 484, 612 N.E.2d 759, suggesting *Crittendon* supports finding an independent cause of action here. The state's reliance is misplaced. *Crittendon* did not deal with a reparations claim under R.C. 2743.72, but addressed the operation of R.C. 3109.05, 5107.04, child support, and the Department of Human Services' right to recover monies erroneously paid under Aid to Dependent Children. While plaintiff contends *Crittendon* held that the Human Services' claim to recover paid monies was subrogated against the father but nonetheless was independent of the mother's claim for support, the critical difference is the language used in the relevant statutes. Similar to the statute in *York*, and unlike R.C. 2743.72, the statute in *Crittendon* reflects an independent right created in the state, as R.C. 5107.04 provides that "[t]he value of the aid so furnished may be recovered in a civil action brought by the county department."

Plaintiff next contends that subjecting plaintiff to the statute of limitations reaches an absurd result. Specifically, plaintiff asserts that if a victim has two years to file for reparations from the crime victims fund, then to subject the state to the statute of limitations will mean the statute of limitations will have expired in some instances by the time the state succeeds to the rights of the subrogor. While the result is frustrating, a court of appeals can use the "absurd result"

rationale only if it is reasonably possible to interpret the statute in a different manner. See *State v. Rhodes* (1958), 168 Ohio St. 165, 5 O.O.2d 467, 151 N.E.2d 716, paragraph two of the syllabus. Because the terms of the statute are unambiguous, the text of R.C. 2743.72 does not "fairly permit" us to construe the statute in an alternate manner. See *Gulf Oil Corp. v. Kosydar* (1975), 44 Ohio St.2d 208, 73 O.O.2d 507, 339 N.E.2d 820.

Finally, we note that R.C. 2743.72 has been amended. The amended version of the statute grants the state an independent right to recover. While the amendment provides strong evidence of the legislature's intent, a subsequent, expansive amendment to a statute does not give this court the power to give an expansive interpretation to the previous, more limited version of the statute. See *State ex rel. Cunningham v. Indus. Comm.* (1987), 30 Ohio St.3d 73, 30 OBR 176, 506 N.E.2d 1179. Moreover, "inquiry into the legislative intent and legislative history is inappropriate absent an initial finding that the language of the statute is, itself, capable of more than one meaning." *Charvat v. Dispatch Consumer Services, Inc.* (Aug. 22, 2000), Franklin App. No. 99AP–1368, unreported, 2000 WL 1180258; citing *United States v. Gonzales* (1997), 520 U.S. 1, 6, 117 S.Ct. 1032, 1035–1036, 137 L.Ed.2d 132, 139. Because the statute is not capable of more than one meaning, we are compelled to conclude R.C. 2743.72 is a traditional subrogation statutes. As such, plaintiff cannot succeed to rights not possessed by the claimants. Therefore, if the statute of limitations would prevent the claimant from filing an action against defendants, it will also prevent plaintiff from so doing.

The Tolling Provision: R.C. 2305.15

Even if the statute of limitations appears to have run, it may have been tolled by the provisions of R.C. 2305.15(B), which states:

"When a person is imprisoned for the commission of any offense, the time of his imprisonment shall not be computed as any part of any period of limitation, as provided in section 2305.09, 2305.10, 2305.11, or 2305.14 of the Revised Code, within which any person must bring any action against the imprisoned person."

"Generally, a cause of action accrues at the time the wrongful act is committed." *Harris v. Liston* (1999), 86 Ohio St.3d 203, 205, 714 N.E.2d 377, 379. Because the record does not indicate conclusively when the wrongful acts were committed, it does not permit us to determine whether the tolling provision of R.C. 2305.15(B) applies to defendants. On remand the trial court should determine the date the claimants' cause of action accrued against defendants, should apply the appropriate statutes of limitation, and determine whether R.C. 2305.15(B) became effective before the statute of limitations expired. If so, the

running of the statute of limitations was tolled by operation of R.C. 2305.15(B) and plaintiff's claim is valid. If not, then the statute of limitation has expired and plaintiff's claim is time-barred.

█ Despite defendants' arguments to the contrary, applying R.C. 2305.15 in that manner does not violate the presumption against retroactive operation of a statute. The presumption against retroactive statutes, as well as the constitutional prohibition, refer to statutes that create and define substantive rights or obligations. *Smith v. New York Cent. Rd. Co.* (1930), 122 Ohio St. 45, 170 N.E. 637; *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 721 N.E.2d 28. A statute which is "remedial in its operation on rights, obligations, duties and interests already existing is not" within that prohibition or presumption. *Smith, supra,* at 48, 170 N.E. at 638. "Statutes of limitation are remedial in nature and may be generally classified as procedural legislation." *Gregory v. Flowers* (1972), 32 Ohio St.2d 48, 61 O.O.2d 295, 290 N.E.2d 181, paragraph one of the syllabus.

Although the wisdom of some of these cases has been challenged, the challenges relate to circumstances where an accrued right is destroyed by retroactive application of the statute of limitations. See, *e.g., Bielat, supra* ; *Eaton v. Ressallat* (Jan. 15, 1982), Crawford App. No. 3–81–15, unreported, 1982 WL 6725. In such a circumstance, the statute of limitations is more substantive than procedural because a vested right is abolished by operation of the statute. Here, a vested right is not destroyed by retroactive application of R.C. 2305.15(B), and the tolling provision contained in R.C. 2305.15(B), procedural in nature, can toll a cause of action if it became effective before the statute of limitations had expired.

The Defense of Laches

█ As a general rule laches cannot be imputed to the state. See *Besl Corp. v. Pub. Util. Comm.* (1976), 45 Ohio St.2d 146, 150, 74 O.O.2d 262, 264–265, 341 N.E.2d 835, 838. Moreover, even if the doctrine of laches has some relevance to this cause of action, defendants would need to demonstrate prejudice. See *State ex rel. Moore v. Sanders* (1981), 65 Ohio St.2d 72, 19 O.O.3d 264, 418 N.E.2d 1339. Although substantial delay occurred in the state's bringing the suit, the record does not show that the delay prejudiced defendants. Finally, the delay in R.C. 2743.72(B) suits typically arises because the state is unlikely to recover a judgment, rendering the subrogation rights acquired by the state hollow in many respects. The equitable doctrine of laches cannot plausibly be interpreted to require the state to act more expeditiously when seeking a judgment that will likely never be satisfied. Defendants' laches argument is not well-taken.

Nonetheless, given our disposition of the statute of limitations issue, we sustain John Doe 32's single assignment of error, John Doe 54's first, second and third

assignments of error, and John Doe 98's first, second, fifth, and seventh assignments of error, all to the extent indicated.

John Doe 54's fourth assignment of error contends summary judgment was inappropriate because he had a right to a trial by jury and because the clean hands doctrine counseled against summary judgment. Even if we were to agree that defendant had a right to a jury trial, it does not follow that summary judgment is improper. "An individual's right to a jury trial is not abridged by the proper granting of a motion for summary judgment." *White v. Vrabel* (Sept. 30, 1999), Franklin App. No. 1351, unreported; citing *Tschantz v. Ferguson* (1994), 97 Ohio App.3d 693, 713, 647 N.E.2d 507, citing *Houk v. Ross* (1973), 34 Ohio St.2d 77, 83–84, 63 O.O.2d 119, 122–123, 296 N.E.2d 266, 270–271. Because the summary judgment issue is remanded, resolution of the issue is premature and John Doe 54's fourth assignment of error is overruled.

■■■ John Doe 98's third assignment of error contends the trial court erred by considering supporting documents accompanying the state's motion for summary judgment that were not served on defendant. Defendant contends he did not receive his indictment, his guilty plea, and the claim for reparations docket sheet. The guilty plea accompanying the state's summary judgment motion, however, was from a different case, so defendant was not prejudiced by not receiving it. Moreover, in his answer to the state's complaint, defendant admitted he committed criminally injurious conduct and the fund made a reparations payment to the victim's family. His admissions establish most of the information sought to be proved by the three documents. To the extent they do not, the matter has been remanded with the concomitant opportunity to serve defendant with any documents not previously served. As a result, defendant sustained no prejudice and John Doe 98's third assignment of error is overruled.

Because John Doe 98's fourth and ninth assignments of error are interrelated, we address them jointly. John Doe 98 contends the trial court abused its discretion when it denied his motion for discovery, his motion compelling discovery and answers to interrogatories, and his request for leave to amend and supplement his answers to plaintiff's complaint. The parties agree the trial court never specifically ruled on those motions. In such circumstances, the motions generally are considered denied. *State ex rel. The V. Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 692 N.E.2d 198. Nonetheless, because this matter is being remanded, the trial court will have the opportunity to formally rule on those issues in the first instance before we consider them. Accordingly, John Doe 98's fourth and ninth assignments of error are overruled as premature.

■■■ John Doe 98's sixth assignment of error contends the trial court violated Civ.R. 56(C) by failing to consider all appropriate materials filed in the record

before ruling on plaintiff's motion for summary judgment. In support, defendant points to the trial court's decision granting the state's motion for summary judgment, where the trial court listed several documents pertaining to the motion for summary judgment. The trial court's failure to list every document defendant filed does not indicate the unmentioned documents were ignored. In contrast to the situation here, in the case defendant relies on, the trial court admitted on the record that it had not read a large portion of the relevant documents. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138, 140–141. Here, no evidence in the record supports defendant's contention that the trial court failed to examine all appropriate materials defendant filed. John Doe 98's sixth assignment of error is overruled.

John Doe 98's eighth assignment of error contends that the trial court erred by allowing the state to recover monies that are exempt from collection. The record does not indicate the trial court specifically ruled on this issue. Because the case is being remanded, the trial court will have the opportunity to formally rule on the issue in the first instance before we consider it on appeal. Accordingly, John Doe 98's eighth assignment of error is overruled as premature.

Having overruled John Doe 54's fourth, and John Doe 98's fourth, eighth, and ninth assignments of error as premature, having overruled John Doe 98's third and sixth assignments of error, but having sustained to the extent indicated John Doe 32's single assignment of error, John Doe 54's first, second, and third assignments of error, and John Doe 98's first, second, fifth, and seventh assignments of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

Tyack and Kennedy, JJ., concur.